UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

RICHARD LIVINGSTON,                  )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        C.A. No.: 05-CV-11350-MLW
                                     )
MORTGAGE SERVICE CENTER, INC.,       )
CUMEX, INC., RAH FEDERAL CREDIT      )
UNION, CHITTENDEN BANK, and          )
VICTORIA SCHEPPS,                    )
                                     )
                Defendants.          )
_____ )

**<u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS MORTGAGE SERVICE CENTER, INC., CUMEX, INC.,
CHITTENDEN BANK, AND RAH FEDERAL CREDIT UNION</u>**

This is not a federal case.  It is a garden variety divorce case, involving prior judgments

in state probate and family court, and in bankruptcy court.  Plaintiff Richard Livingston, the

divorced husband, is bitter over his divorce, and disappointed in the rulings that went against him

in divorce court and bankruptcy court.  As a result, he has turned, *pro se*, to federal court in an

improper effort to do an end-run around his prior losses.[1]  The problem is that he does not have a

legal leg to stand on.  The Amended Complaint as against the defendants Mortgage Service

---

[1]  Notably, this is not the first or only lawsuit brought by plaintiff for alleged wrongs arising out of his divorce. For instance, on June 27, 2005, the same day plaintiff filed the instant matter, he also filed a separate federal lawsuit in this court against the MBTA Employees' Credit Union advancing many of the same allegations he advances here. *See Richard Livingston v. MBTA Employees' Credit Union*, Civil Action No. 05-CV-11349-RCL.  Plaintiff also previously sued defendant Victoria Schepps in state court alleging the exact claims he now seeks to relitigate against her here. *See* Complaint in the matter of *Richard Livingston v. Victoria Schepps*, Stoughton District Court, C.A. No. 0455-CV-53, a copy of which is attached hereto at Tab F.  That case was dismissed on the pleadings and a judgment entered against Mr. Livingston. *See* Order of the Stoughton District Court, dated March 10, 2005 ("3/10/05 Stoughton Dist. Ct. Order"), a copy of which is attached at Tab G. *See also* Order of the Stoughton District Court denying Mr. Livingston's motion for reconsideration, dated April 28, 2005 ("4/28/05 Stoughton Dist. Ct. Order"), a copy of which is attached at Tab H.  Mr. Livingston is collaterally estopped from relitigating against Ms. Schepps the claims that were already dismissed in state court. *See Johnson v. Mahoney*, 424 F.3d 83, 93-95 (1st Cir. 2005).

Center, Inc., Cumex, Inc., Chittenden Bank (collectively, "Chittenden") and RAH Federal Credit Union ("RAH") must be dismissed because it fails to state a claim upon which relief may be granted.

Plaintiff's Amended Complaint focuses on the refinancing by his former wife – Margaret Livingston, nee Clifford ("Ms. Clifford") – of certain mortgages on the divorced couple's jointly owned former marital home located at 15 Quarry Lane, Milton, Massachusetts. Plaintiff articulates two theories of wrongdoing against defendants Chittenden and RAH in connection with the refinancing: (i) defendants allegedly refinanced the mortgages without notice to him, without his permission, and without his signature on the requisite refinancing documents ("Lack of Notice Theory"); and (ii) defendants allegedly provided refinancing in excess of the amount needed by Ms. Clifford to fulfill the limited purposes for which the probate and family court had authorized refinancing ("Excessive Amount Theory"). Each of these theories is fatally flawed on the facts, as alleged in the Amended Complaint, or the law or both.

_Lack of Notice Theory_ – Although the Amended Complaint alleges that plaintiff did not receive prior notice of the refinancing, it also acknowledges, as it must, that on May 24, 2001, _prior_ to the refinancing, a Massachusetts probate and family court issued a written order specifically authorizing Ms. Clifford to refinance the mortgages without obtaining plaintiff's signature and without otherwise involving him. The Amended Complaint maintains that at the same time that the state court judge issued his written order he issued a conflicting oral statement to the effect that refinancing would require plaintiff's signature. But the Amended Complaint also makes clear that neither Chittenden nor RAH was ever provided with any documentation or evidence that the probate and family court judge had allegedly countermanded or contradicted his written order at the very moment he issued it. Furthermore, the Amended Complaint

acknowledges that Chittenden and RAH specifically relied upon the probate and family court judge's written order in going forward with the refinancing of the mortgage on 15 Quarry Lane.

_Excessive Amount Theory_ – The Amended Complaint alleges that the probate and family court's written May 24, 2001 order imposed limits on the amount and potential uses of the prospective refinancing, and that Chittenden and RAH exceeded those limits.  But the actual order, which is quoted in the Amended Complaint, speaks for itself and says nothing about limiting the amount of refinancing.  Without question, it speaks of the purposes for which Ms. Clifford may use the monies obtained by the refinancing, but that is irrelevant as to Chittenden and RAH.  The limitations on use imposed by the May 24, 2001 order applied to Ms. Clifford.  If she used the refinance monies for purposes beyond those limitations, plaintiff's grievance is with her, not with Chittenden or RAH.  The state court's May 24, 2001 order imposed no duty on Chittenden or RAH to police Ms. Clifford's use of the refinancing proceeds, and no such duty exists as a matter of law.

Simply put, the alleged "wrong" committed by Chittenden and RAH boils down to their having refinanced mortgages in full compliance with the express written authorization of a Massachusetts state court while failing to do something – namely, monitor Ms. Clifford's use of the proceeds – that they had absolutely no duty to do.  Based on this purported "wrong," and nothing more, plaintiff has fashioned the current lawsuit alleging violations of the United States Trade Commission Act ("FTC Act"), the United States Bank Fraud Statute, and the United States Bankruptcy Code, as well as miscellaneous pendent Massachusetts statutory and common law theories.  As a matter of law, and per Fed. R. Civ. P. 12(b)(6), each of the claims against Chittenden and RAH must be dismissed:

- _FTC Act Claims (Counts 10-13)_ – These claims must be dismissed because the FTC Act does not provide for a private right of action.

- *Bank Fraud Claims (Counts 14-17)* – These claims must be dismissed because, like the FTC Act, the Bank Fraud Statute does not provide for a private right of action.

- *Bankruptcy Code Violations (Counts 18-21)* – Plaintiff alleges violations of the "automatic stay provision" of the Bankruptcy Code. These claims must be dismissed for two equally dispositive reasons: First, a claim for violation of the automatic stay provision of the Bankruptcy Code may properly only be brought in bankruptcy court during an extant bankruptcy proceeding. Here, as acknowledged in the Amended Complaint, plaintiff was discharged from bankruptcy nearly five years ago. [Am. Compl. ¶ 23.] His claimed violation of the bankruptcy code's automatic stay is, therefore, not properly before this Court. *See In re Bright*, 2006 WL 408414, at *5 (1st Cir. BAP, Feb. 23, 2006). Second, regardless of whether an extant bankruptcy proceeding is necessary to assert a claim for violating the bankruptcy code's automatic stay provision, here, back in 2001, the bankruptcy court lifted the stay so that Ms. Clifford could pursue all her rights against plaintiff in the divorce proceeding, including her right to refinance 15 Quarry Lane. Lifting the stay occurred *prior* to defendants' purported violation. It is legally impossible to violate an automatic stay that is not in place at the time of the supposed violation.

- *Pendent State Law Claims (Counts 1-4, and 6-9)* – There is no diversity jurisdiction in this case. As a result, if and when the court dismisses plaintiff's federal claims, it should exercise its discretion to dismiss his pendent state law claims. *See, e.g., B.C. Recreational Indus. v. First Nat'l Bank*, 639 F.2d 828, 834 (1st Cir. 1981) (affirming dismissal of pendent state law claims because "Plaintiffs made a deliberate, if not very well reasoned, choice to proceed in federal court . . . [but] had been unable to cross the federal threshold"). Independent of the court's jurisdictional inclination, the pendent state law claims – Mass. Gen. L. ch. 93A claims (Counts 1-4) and the claims for negligent hiring and supervision (Counts 6-9) – must be dismissed as a matter of law.

   - *Chapter 93A Claims* – The Amended Complaint does not allege any factual predicate to support a 93A, unfair and deceptive business practices, violation. Indeed, the Amended Complaint does not even come close. *See, e.g., Massachusetts School of Law at Andover, Inc. v. American Bar Assoc.*, 142 F.3d 26, 42 (1st Cir. 1998) (Chapter 93A claims must be dismissed unless they "at least come within shouting distance of some established concept of unfairness").

   - *Negligent Hiring and Supervision* – These claims, which allege that Chittenden and RAH were negligent in hiring and supervising co-defendant Schepps, must be dismissed for two reasons. First, the Amended Complaint has not alleged any conduct on the part of Schepps that would constitute negligence as a matter of law. Indeed, as noted above (*see* footnote 1), a state court previously dismissed a separate negligence lawsuit commenced by plaintiff Livingston against defendant

Schepps, and Mr. Livingston is collaterally estopped from relitigating his negligence claim against Ms. Schepps for a second time in this court. Without negligence by Schepps, there can not, *a fortiori*, be any negligence on the part of the parties who hired and supervised her. Second, regardless of the merits or lack thereof of the instant negligence claims, those claims are barred by the applicable statute of limitations.

At bottom, this is an entirely frivolous case. Plaintiff has no basis whatsoever to bring any legal claim against Chittenden or RAH. Accordingly, the Amended Complaint should be dismissed *with prejudice*, as any effort to further amend the complaint would prove futile.

## STATEMENT OF UNDISPUTED FACTS[2]

### 1.    The State Court Divorce Proceeding

Plaintiff and his former wife, Ms. Clifford, were divorced pursuant to a Judgment of Divorce Nisi and Separation Agreement ("Divorce Judgment") entered by the Norfolk Probate and Family Court on December 14, 1998 in the matter of *Margaret Livingston v. Richard Livingston*, No. 97D1237-D1. [Am. Compl. at ¶ 8.][3] The Divorce Judgment explicitly authorized Ms. Clifford to refinance the mortgages on the home she and her former husband jointly owned at 15 Quarry Lane in Milton, Massachusetts, at her election. [Divorce Judgment Ex. A hereto) at ¶¶ 5-6; Am. Compl. at ¶¶ 8 & 10.] The Divorce Judgment indicated that Ms. Clifford could elect to refinance the mortgages on the 15 Quarry Lane property to consolidate and pay off debt, and it required plaintiff to cooperate in any election by his former wife to

---

[2]    The "facts" stated herein are all taken from plaintiff's Amended Complaint ("Am. Compl.") or from judicial orders and judgments referenced in the Amended Complaint. For purposes of this motion to dismiss, defendants do not dispute any of the factual allegations in the Amended Complaint. If, however, the Amended Complaint survives the instant motion, defendants reserve the right to contest the allegations going forward.

[3]    A copy of the Divorce Judgment is attached hereto at Tab A. For purposes of a motion to dismiss, the Court may consider all facts alleged within the four corners of a complaint as well as facts contained in documents referenced in the complaint, even if not attached to the complaint itself. *See, e.g., Beddall v. State Street Bank & Trust Company*, 137 F.3d 12, 16-17 (1st Cir. 1998) (in Rule 12(b)(6) context, district court may consider documents referenced in complaint); *see also Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). Indeed, even if not referenced in the complaint, in ruling on a motion to dismiss, courts may consider judgments and orders issued by other courts. *See Watterson*, 987 F.2d at 3-4.

refinance.  [*Id.*]  The Divorce Judgment imposed no dollar limitations on the amount of any potential refinancing.  [*Id.*]

### 2.    **The Bankruptcy Proceeding**

Before Ms. Clifford could refinance the mortgages on 15 Quarry Lane, plaintiff filed for bankruptcy in the United States Bankruptcy Court for the District of Massachusetts triggering an automatic stay on March 7, 2001.  [Am. Compl. at ¶ 21.]  Shortly thereafter, Ms. Clifford sought and obtained relief from the automatic stay.  Specifically, on April 24, 2001, the bankruptcy court entered an order of relief from stay ("Relief Order") "vacat[ing] and extinguish[ing]" the stay "for all purposes" as against Ms. Clifford and expressly permitting her to pursue her rights under the Divorce Judgment.  [*See* Relief Order, a copy of which is attached hereto at Tab B.]

### 3.    **Judgment of Contempt Against Plaintiff**

On May 24, 2001, one month after Ms. Clifford had obtained the Relief Order from the bankruptcy court, she obtained a judgment of contempt against plaintiff in the Norfolk County Probate and Family Court ("Contempt Judgment" or "May 24 Order").  [Am. Compl. at ¶¶ 11-12.  *See also* Contempt Judgment at ¶¶ 10-11.  A copy of the Contempt Judgment is attached hereto at Tab C.]  The Contempt Judgment referenced the Relief Order from the bankruptcy court and authorized Ms. Clifford to refinance the mortgages on 15 Quarry Lane without involving her former husband.  [Contempt Judgment at ¶¶ 1, 4, 10-11; Am. Compl. at ¶¶ 11-12.]  As specifically alleged in the Amended Complaint:

> On May 24, 2001 the Norfolk County [Family] and Probate Court entered an order which states "The former wife shall have the right to refinance the first and second mortgages with respect to the former marital home in order to satisfy the existing first and second mortgages and to pay outstanding marital debt if she so elects. . . . The ***former husband shall not be required to sign any documents*** in connection with former spouse's effort to refinance the outstanding mortgages and existing marital debt."

[Am. Compl. at ¶¶ 11-12 (emphasis added); Contempt Judgment at ¶¶ 10-11.]

Plaintiff alleges that at the same time that the family and probate judge entered his written Contempt Judgment expressly stating that refinancing could proceed without plaintiff's signature, the judge "also ordered orally that the wife would not be able to refinance the property without the signature of the plaintiff Richard Livingston." [Am. Compl. at ¶ 13.] Plaintiff does not, however, allege, nor could he, that either Chittenden or RAH was ever given notice or ever had any knowledge of the family and probate judge's purported "oral" order. [*See* Am. Compl. *generally*.] In contrast, the Amended Complaint acknowledges that Chittenden and RAH had knowledge of the written May 24 Order before Ms. Clifford attempted to refinance the mortgages on 15 Quarry Lane. [*Id.* at 19-20.]

### 4.    The Refinancing of the Mortgages on 15 Quarry Lane

Following receipt of the Judgment of Contempt authorizing her to refinance the mortgages on 15 Quarry Lane without obtaining plaintiff's signature, Ms. Clifford applied for refinancing with Chittenden and RAH. [Am. Compl. at ¶ 14.][4] The application was approved, but only after Chittenden and RAH had been made aware of the May 24 Order. [*Id.* at ¶¶ 15-16.] The closing on the refinancing occurred on July 27, 2001. [*Id.* at ¶ 19.] Plaintiff became aware of the closing no later than August 17, 2001. [*Id.* at ¶ 29.]

---

[4]    Plaintiff alleges that defendants "accepted" Ms. Clifford's application for refinancing while the home was still "under the control of the United States Bankruptcy Court." [Am. Compl. at ¶ 37.] Elsewhere in the Amended Complaint [*id.* at ¶ 14], however, plaintiff makes clear that the application was made in "May/June," *i.e.*, after the Bankruptcy Court had issued its April 24, 2001 Relief Order, vacating and extinguishing the stay as against Ms. Clifford "for all purposes" and expressly authorizing her to pursue her rights in the divorce proceeding. [Relief Order (Tab B).] Furthermore, the approval of the application – *i.e.*, the act over which Chittenden and RAH had actual control – occurred well *after* the Relief Order, and *after* the probate and family court had expressly authorized Ms. Clifford to proceed with refinancing without her former husband's permission or involvement. [Compl. at ¶¶ 11-12, 15-16.]

5.    **Plaintiff Is Discharged From Bankruptcy**

Plaintiff was discharged from bankruptcy on July 26, 2001, *i.e.*, a day before the closing took place on the refinancing of the mortgages on 15 Quarry Lane.  [Docket Sheet in *In re Richard Livingston*, U.S. Bankruptcy Court, No. 01-11602-JNF, a copy of which is attached hereto at Tab D "Bankruptcy Docket Sheet"; Am. Compl. at ¶¶ 17, 23.]  The bankruptcy matter in its entirety was terminated on January 10, 2002.  [*See* Bankruptcy Docket Sheet.]

## APPLICATION OF LAW TO FACTS

It does not take a lot to state a claim in federal court.  Pleading requirements are minimal.  But "minimal requirements are not tantamount to nonexistent requirements."  *Gooley v. Mobile Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988).  "'[B]ald assertions, unsupportable conclusions, and opprobrious epithets' woven into the fabric of the complaint" are insufficient to withstand a Rule 12(b)(6) motion.  *In Re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003).  Even *pro se* plaintiffs cannot expect that their allegations will be taken on blind faith.  *See*, *e.g.*, *Overton v. Torruella*, 183 F. Supp. 2d 295, 303, 306-07 (D. Mass. 2001) (dismissing *pro se* complaint and observing that the court "has no obligation to take the allegations of the complaint on blind faith").  Complaints filed by *pro se* plaintiffs, like any complaint, must be dismissed where "its contentions [are] without any legal or factual basis . . . and [are] objectively frivolous."  *Lebebvre v. Commissioner of Internal Revenue*, 830 F.2d 417, 419-20 (1st Cir. 1987).  That is exactly the case here.  Each of plaintiff's claims against Chittenden and RAH is "without any legal or factual basis."  Each claim is "objectively frivolous."

1.     **Plaintiff's Federal Trade Commission Act Claims – Counts 10-13 – Must Be Dismissed.**

Counts 10 through 13 of the Amended Complaint allege violations of something referred to as the "Federal Trade Act."  [Am. Compl. at ¶ 76.]  But the "Federal Trade Act" does not exist.  Reading the Amended Complaint, however, in the fairest and most liberal manner possible, it would appear as if Counts 10-13 are actually based on alleged violations of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act").  The FTC Act does not, however, provide for any private cause of action.  *See*, *e.g.*, *Holloway v. Bristol-Meyers Corp.*, 45 F.2d 986, 988-1002 (D.C. Cir. 1973) (no private right of action exists under the FTC Act); *Tanol Distrib., Inc. v. Panasonic Co.*, 1987 WL 13319 at *2 (D. Mass. July 2, 1987) ("Numerous cases have established that no private right of action exists under the FTCA"); *First Phone Co. of New England, Inc. v. New England Tel. & Tel. Co.*, 1981 WL 2052, at *3 (D. Mass. Mar. 31, 1981) (same).  Because no private cause of action exists under the FTC Act, Counts 10-13 of the Complaint must be dismissed.  *See*, *e.g.*, *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237-38 (2d Cir. 1974).

2.     **Plaintiff's Bank Fraud Claims – Counts 14-17 – Must Be Dismissed.**

Counts 14 through 17 of the Amended Complaint allege that Chittenden and RAH have committed "bank fraud."  Although plaintiff does not specify a specific statutory violation, presumably he is alleging violations of one of the federal bank fraud statutes, namely, 18 U.S.C. §§ 1014 & 1344.  The bank fraud claims, like the FTC Act claims, must be dismissed because "there is no private right of action for bank fraud under federal law."  *Christakes v. Burnhart*, 1997 WL 94740, at *1 (N.D. Ill. Feb. 28, 1997); *Park Nat'l Bank v. Michael Oil Co.*, 702 F. Supp. 703, 704 (N.D. Ill. 1989); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 528-29 (E.D. Ky. 2005); *see also Overton v. Torruella*, 183 F. Supp. 2d 295, 307 (D. Mass. 2001) (dismissing

claim alleging violation of federal criminal statute, observing that private citizens do not have authority to initiate civil claims under the federal criminal code).[5]

### 3.    Plaintiff's Bankruptcy Code Claims – Counts 18-21 – Must Be Dismissed.

In Counts 18 through 21 of the Amended Complaint, plaintiff alleges that Chittenden and RAH violated the "Automatic Stay provisions of the United States Bankruptcy Code." These claims must be dismissed for two separate and equally dispositive reasons:

First, asserting a claim for violation of the stay provision of the bankruptcy code may only properly be brought in bankruptcy court in connection with a pending bankruptcy proceeding. *See* 1 David G. Epstein et al., *Bankruptcy* § 3-33(a) & n.8 (1992) (individual injured due to stay violation "will pursue her action in bankruptcy as a disputed matter"). Here, plaintiff was discharged from bankruptcy in July 2001 [*see* Am. Compl. at ¶ 23] and his bankruptcy proceeding was terminated in January 2002 [*see* Bankruptcy Docket Sheet (Tab D)]. If he was going to bring a claim for a violation of the automatic stay provision of the bankruptcy code, he should have brought it in bankruptcy court five years ago. He cannot bring it here. *See*, *e.g.*, *In re Bright*, 2006 WL 408414, at *5 (1st Cir. BAP, Feb. 23, 2006).[6]

---

[5]    To the extent plaintiff intended to plead some species of fraud other than bank fraud, Counts 14-17 would still have to be dismissed pursuant to Fed. R. Civ. P. 9(b). Plaintiff's conclusory allegations concerning "fraud" do not come close to meeting Rule 9(b)'s requirement that fraud be pled with particularity. *See*, *e.g.*, *United States ex. rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 226 (1st Cir. 2004). In fact, plaintiff has not pled any facts sounding in fraud. Rather, the allegations of the Amended Complaint are, if anything, negligence based. [*See*, *e.g.*, Am. Compl. at ¶ 32 ("defendant parties . . . were aware or should have been aware . . .").]

[6]    The bankruptcy court rejected an earlier attempt by plaintiff to attack the Contempt Judgment when it denied his motion to modify the judgment on the ground that it was barred by the so-called *Rooker-Feldman* doctrine, holding that plaintiff's "remedy, if one exists, is an appeal from the orders of the Probate Court." *See* Bankruptcy Ct. Order dated Nov. 6, 2001, a copy of which is attached hereto at Tab E. *See also Halvosen v. Mendez (In re Mendez)*, 246 B.R. 141, 145-46 (Bankr. D. P.R. 2000) (explaining the *Rooker-Feldman* doctrine).

Second, neither Chittenden nor RAH could have violated the automatic stay entered by the bankruptcy court in plaintiff's proceeding, because in all relevant respects that stay was lifted three months *before* Ms. Clifford refinanced the mortgages on 15 Quarry Lane. Specifically, on April 24, 2001, the bankruptcy court issued the Relief Order, a copy of which is attached hereto at Tab B, in which it stated:

> The Automatic Stay in the above Bankruptcy proceeding is vacated and extinguished for all purposes as to the Movant [Ms. Clifford], her assignees and/or successors in interest and [Ms. Clifford] may proceed to assert her rights against the Debtor [plaintiff Livingston] within the divorce proceeding . . . more fully described in *Livingston v. Livingston* . . . 97D1237-D1 by [] any means necessary, all pursuant to applicable state and federal law….[Ms. Clifford is further] allowed to proceed against the Debtor immediately.

It was only after obtaining this Relief Order from the bankruptcy court that Ms. Clifford sought and obtained specific authority from the probate and family court to refinance the mortgages on 15 Quarry Lane without plaintiff's signature. In fact, the probate and family court specifically relied on the Relief Order in issuing its Contempt Judgment against plaintiff:

> Due to the complications created by the former husband's filing for bankruptcy, from which relief was given by the Bankruptcy Court from the automatic stay, the former husband's child support obligations shall be specifically articulated to avoid further confusion and multiple court appearances, which have occurred to date. . . . The former wife shall have the right to refinance the first and second mortgages with respect to the former marital home . . . [and] [t]he former husband shall not be required to sign any documents in connection with the wife's effort to refinance.

[Contempt Judgment at ¶¶ 10-11.] It was in reliance upon this Contempt Judgment, which specifically noted the lifting by the bankruptcy court of the automatic stay, that Chittenden and RAH proceeded to refinance the mortgages on 15 Quarry Lane. [Am. Compl. at ¶¶ 11, 12, 15-16.] The bankruptcy court lifted the stay, and the probate and family court issued its Judgment

11

of Contempt precisely so as to permit institutions such as Chittenden and RAH to refinance plaintiff's former marital home.  Chittenden and RAH can hardly be held to have violated an automatic stay which did not apply at the time of the purported "violation."  Accordingly, plaintiff's bankruptcy code claims must be dismissed.

**4.    Plaintiff's Pending State Law Claims – Counts 1-4 and 6-9 – Must Be Dismissed.**

Aside from plaintiff's FTC Act, Bank Fraud, and Bankruptcy Code claims, all of plaintiff's remaining claims arise under state law.  Since there is no diversity jurisdiction in the case [*see* Am. Compl. at ¶¶ 2-7],[7] if and when the federal claims are dismissed, this Court should exercise its discretion and decline to assert jurisdiction over the pendent state law claims.  As the Supreme Court stated in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988): "When . . . a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  Where, as here, plaintiff makes "a deliberate, if not very well reasoned, choice to proceed in federal court . . . [but is] unable to cross the federal threshold" his pendent state law claims should be dismissed.  *B.C. Recreational Indus.*, 639 F.2d at 834; *see also Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 238 (2d Cir. 1974).

If this Court decides to evaluate the merits of plaintiff's pendent state law claims, those claims would nevertheless have to be dismissed.

---

[7]    Plaintiff alleges diversity jurisdiction in the first paragraph of the Complaint, but his factual allegations concerning the parties makes clear that there is no diversity.  [*See* Compl. at ¶¶ 2-7.]

(a)   **Plaintiff's 93A Claims – Counts 1-4 – Must Be Dismissed.**

Counts 1 through 4 of the Amended Complaint allege violations of Mass. Gen. L. ch. 93A.  For conduct to be actionable under Chapter 93A, it must be unfair or deceptive.  Mass. Gen. L. ch. 93A, § 2(a).  "[T]he litmus test for transgression of Chapter 93A involves behavior which falls within 'the penumbra of some . . . established concept of unfairness,' and is sufficiently 'unethical or unscrupulous' to be actionable under the statute."  *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515-16 (1st Cir. 1988).  A complaint that fails to allege conduct that "at least come[s] within shouting distance of some established concept of unfairness[]" must be dismissed.  *Massachusetts School of Law*, 142 F.3d at 42.  Here, plaintiff does not allege conduct on the part of either Chittenden or RAH that comes anywhere close to shouting distance of unfair or deceptive conduct.  As a matter of law, refinancing of mortgages on a home, based on express authorization provided by a state court, simply cannot be unfair or deceptive.  *See*, *e.g.*, *Gooley*, 851 F.2d at 516 (affirming dismissal of chapter 93A claim where "there was no factual predicate" to suggest defendant's conduct came close to violating the statute); *Massachusetts School of Law*, 142 F.3d at 42-43 (affirming dismissal of 93A claim where complaint alleged no cognizable basis for liability under the statute).  Likewise, failing to police Ms. Clifford's use of the proceeds of the refinancing, when there is no legal duty to do so – *see*, *e.g.*, *F.D.I.C. v. Smith*, 848 F. Supp. 1053, 1057 (D. Mass. 1994) – cannot give rise to 93A liability.  *See Coraccio v. Lowell Five Cents Savings Bank*, 415 Mass. 145, 154 (1993).

(b)   **Plaintiff's Negligent Hiring and Supervision Claims – Counts 6-9 – Must Be Dismissed.**

Counts 6 through 9 of the Amended Complaint allege that Chittenden and RAH were negligent in hiring and supervising co-defendant Schepps.  These claims must be dismissed for two independent reasons:

First, the Amended Complaint has not alleged conduct that could reasonably be construed as negligent on the part of defendant Schepps. In essence, she is alleged to have: (i) represented Chittenden and RAH in connection with the refinancing [Am. Compl. at ¶¶ 18, 22]; and (ii) permitted the disbursement of monies from the refinancing in an amount in excess of what was required to fulfill the purposes authorized by the probate and family court [Am. Compl. at ¶¶ 25-27].

With regard to the first set of allegations, it is simply not negligence as a matter of law to represent financial institutions in connection with a refinancing and authorize the refinancing to go forward on the basis of an express court order. *See, e.g., Page v. Frazier*, 388 Mass. 55, 67-68 (1983). With respect to the second set of allegations, the May 24, 2001 order of the state court did not impose any dollar limit on the refinancing, [Am. Compl. at ¶¶ 11, 12; Contempt Judgment (Tab C hereto) at ¶¶ 10, 11], nor did Ms. Schepps, as a matter of law, have any duty to monitor Ms. Clifford's use of the refinancing proceeds. *See Schmid v. National Bank of Greece*, 622 F. Supp. 704, 710-13, (D. Mass. 1985) (finding no duty between bank's attorney and plaintiff). In fact, plaintiff is collaterally estopped from relitigating the issue of Ms. Schepps's duty. As he himself has acknowledged, a state court has already found that Ms. Schepps owed him no duty. *See* Richard Livingston's motion for reconsideration in the matter of *Richard Livingston v. Victoria Schepps*, Stoughton Dist. Ct., C.A. No. 0455-CV-53 at Tab H (noting that the court had granted Ms. Schepps's motion for a judgment on the pleadings "on the basis that

the Defendant owed no duty to the plaintiff and therefore as a matter of law the Complaint could

not succeed").[8]

Having tried and failed to successfully litigate the issue of Ms. Schepps's negligence

previously, Mr. Livingston may not try again.  *See Johnson v. Mahoney*, 424 F.3d 83, 93-95 (1st

Cir. 2005) (plaintiff is collaterally estopped from proceeding in federal court where state court

had previously adjudicated same issue).  And, of course, without negligence or any duty on the

part of Ms. Schepps, there cannot, as a matter of law, be any negligence on the part of the parties

who allegedly hired and supervised her.  *See, e.g., Schmid*, 622 F. Supp. at 710-13 (finding "no

basis in fact" for negligence claims against bank and loan officer where both acted in accordance

with written agreement and finding no duty between bank's attorney and plaintiff); *see also*

*Page*, 388 Mass. at 68 (finding no duty by bank's title attorney or by bank to plaintiffs in

connection with purchase of property and rejecting plaintiff's liability theory that attorney was

an employee or agent of the bank).[9]

Second, even if Ms. Schepps had the requisite duty and had been negligent, and even if

Chittenden and RAH had been negligent in hiring and supervising her, plaintiff's claims for

negligent hiring and supervision would still have to be dismissed because they are time-barred.

The applicable statute of limitations on plaintiff's negligence claims is three years.  Mass. Gen.

L. ch. 260, § 2A ("Actions of tort . . . shall be commenced only within three years next after the

---

[8]    A copy of the motion for reconsideration that Mr. Livingston filed in the Stoughton District Court is attached
hereto at Tab H.  Mr. Livingston's motion was denied.  *See* 4/28/05 Stoughton Dist. Ct. Order (Tab H hereto).
The district court's judgment on the pleadings became final, and was never appealed by Mr. Livingston.  [*See
Livingston v. Schepps*, Stoughton Dist. Ct., C.A. No. 0455-CV-53 Civil Docket Sheet, a copy of which is
attached hereto at Tab I.]  Instead of appealing the district court decision, Mr. Livingston has improperly
brought the same rejected claims all over again in this Court.  This is impermissible.  *See Johnson v. Mahoney*,
424 F.3d 83, 93-95 (1st Cir. 2005).

[9]    *See also* Memorandum in Support of Motion to Dismiss of Victoria Schepps, filed in this action.  Defendants
Chittenden and RAH incorporate all arguments presented in Ms. Schepps's memorandum in support of her
motion to dismiss insofar as those arguments pertain to Chittenden and RAH.

cause of action accrues"); *see also Salois v. Dime Savings Bank*, 128 F.3d 20, 24-25 (1st Cir. 1997) (three year tort limitations period governs claims for negligent hiring and supervision).  A cause of action for negligent hiring and supervision accrues at the time of the alleged injury. *Salois*, 128 F.3d at 24-25.  Here, plaintiff's alleged injury occurred on or about July 27, 2001 when the mortgage refinancing on 15 Quarry Lane closed.  [Am. Compl. at ¶ 17.]  At the latest, the claims accrued when plaintiff learned of the refinancing, which, according to the Amended Complaint, occurred no later than August 17, 2001.  [Am. Compl. at ¶ 29.]  Regardless of whether plaintiff's negligence claims accrued in July or August 2001, they indisputably accrued more than three years before plaintiff filed the instant lawsuit on June 27, 2005.  [*See* Plaintiff's Civil Cover Sheet filed in this Court.]  Accordingly, Counts 6 through 9 must be dismissed.  *See*, *e.g.*, *Salois*, 128 F.3d at 24-25 (affirming dismissal of negligent hiring and supervision claim on statute of limitations grounds); *Corliss v. City of Fall River*, 397 F. Supp. 260, 263, 269 (D. Mass. 2005) (dismissing *pro se* plaintiff's complaint for failure to state a claim because claims were time-barred under Mass. Gen. L. ch. 260, § 2A); *Stone v. Chao*, 284 F. Supp. 2d 241, 247-48 (D. Mass. 2003) (dismissing negligent supervision and other claims as time barred).

## CONCLUSION

This is a case that does not belong in federal court, or for that matter in any court. Plaintiff's claims against Chittenden and RAH are all predicated on nothing more than the two financial institutions having refinanced the mortgages on his former marital home based on an express court authorization to do so.  Per plaintiff's own allegations, there neither was nor could have been anything wrong or unlawful with Chittenden's or RAH's conduct.  As a consequence, all the claims against them fail and must be dismissed.  Furthermore, since plaintiff has pointed to nothing that either Chittenden or RAH potentially did that could be construed as wrong or unlawful, the Amended Complaint should be dismissed with prejudice.  Permitting plaintiff to

16

further amend his Amended Complaint would be an exercise in futility.  The existing claims are

frivolous and further frivolousness should not be encouraged.

Respectfully submitted,

MORTGAGE SERVICE CENTER, INC.,
CUMEX, INC., and CHITTENDEN BANK

By their attorneys,

/s/ Christopher J. Hunter
David J. Apfel (BBO # 551139)
Christopher J. Hunter (BBO # 640397)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

and

RAH FEDERAL CREDIT UNION

By its attorneys,

/s/ Harvey Weiner
Harvey Weiner (BBO # 519840)
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA  02110
(617) 951-2100

Dated:  March 20, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 20, 2006.

_/s/ Christopher J. Hunter_
Christopher J. Hunter

LIBA/1682736.2

**Tab A**

# THE COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT

## PROBATE AND FAMILY COURT

**NORFOLK DIVISION**

**I, Patrick W. McDermott**, Register of the Probate and Family Court for said County of Norfolk, having, by law, custody of the seal and all the records, books, documents and papers of or appertaining to said Court, hereby certify the paper hereunto annexed to be a true copy of a paper appertaining to said court, and on file and of record in the office of said Court, to wit:

IN THE MATTER OF LIVINGSTON V. LIVINGSTON

Judgment Entered December 14, 1998; Agreement Dated December 14, 1998

RE: 97D1237D1

IN WITNESS WHEREOF,
I have hereunto set my hand and
affixed the seal of said Court,
this 13TH day of FEBRUARY
In the year of our Lord two thousand and six

_____
*Register*



**Commonwealth of Massachusetts**
**The Trial Court**
**Probate and Family Court**

DOCKETED

DEC 1 6 1998

Norfolk Division                                    Docket No. 97D1237-D1

Margaret Livingston, **Plaintiff**

v.          **JUDGMENT OF DIVORCE NISI**

Richard Livingston, **Defendant**

All persons interested having been notified in accordance with the law, and after hearing and, it is adjudged nisi that a divorce from the bond of matrimony be granted the said plaintiff for the cause of   as provided by Chapter 208, section 1-B; and that upon and after the expiration of ninety days from the entry of this judgment, it shall become and be absolute unless, upon the application of any person within such period, the Court shall otherwise order. It is further ordered that the Agreement of the parties dated December 14, 1998 is approved and incorporated into and made part of this Judgment, but shall SURVIVE and be deemed to have independent legal significance, except as to those provisions relating to the unemancipated children which shall be incorporated and MERGED into this Judgment.

1.    SALE OF HOME: Wife's remarriage shall <u>not</u> trigger a required sale of the marital home.

2.    PERSONAL PROPERTY: Husband shall be entitled to the contested personal property listed at paragraph 2) of Exhibit I.

3.    BANK OF BOSTON LOAN (approximately $12,000): Husband shall not be responsible for re-payment of this loan.

4.    $500 LEGAL FEE: Husband shall not be responsible for Wife's $500 legal fee on account of Quincy District Court criminal complaint.

5.    MAIDEN NAME: The wife is hereby given the right to resume her former name, to wit: Margaret M. Clifford.

_December 14, 1998_
Date
3/15/99

_Christina L. Harms_, Justice

NORFOLK

*Filed 12-14-98*

LIVINGSTON V. LIVINGSTON

DOCKET #
97D1237-DU

## SEPARATION AGREEMENT

DOCKETED
DEC 1 6 1998 

AGREEMENT made on this 14th day of December 1998 between Richard Livingston of Milton, Norfolk County, Massachusetts (hereinafter referred to as the "Husband") and Margaret Livingston of Milton, Norfolk County, Massachusetts (hereinafter referred to as the "Wife").

### STATEMENT OF FACTS

The Husband and Wife were married on May 27, 1979 at Boston, Massachusetts and last lived together at 15 Quarry Lane, Milton, Massachusetts. There are two minor children, namely: Siobhan M. born , May 29, 1981, and Brendan R. born June 29, 1987 .

The Husband and Wife have been separated since August 27, 1997 and are living apart. The Wife filed a Complaint for divorce in the Norfolk Probate Court. The Husbnd and Wife have had independent legal advice from counsel of their selection. The Husband and Wife each fully understand the facts and have been fully informed of their legal rights and liabilities; and each signs the Agreement freely and voluntarily.

NOW, THEREFORE, in consideration of the mutual promises, agreements and covenants hereinafter contained, the Husband and Wife mutually agree as follows:

-1-

1.    From the date hereof, the Husband and Wife shall continue to live separate and apart for the rest of their lives as fully as if sole and unmarried, and free from the authority of, or interference by the other. This language shall not be construed as a restraining order pursuant to M.G.L. c. 209A.

2.    Except as provided herein, the Husband and Wife each hereby waives any right to elect to take against any last will made by the other, including all rights of dower or courtesy, and hereby waives, renounces and relinquishes unto the other, their respective heirs, executors, administrators and resigns forever, all and every interest of any kind or character which either have may now have or may hereafter acquire in or to any real or personal  property of the other, and whether now owned or hereafter acquired by either, except to enforce any obligation imposed by this Agreement. This Agreement shall be binding upon the estates of the parties.

3.    Except as otherwise herein provided, the Husband and Wife hereby mutually release and forever discharge each other from any and all actions, suits, claims, debts, demands and obligations whatsoever, which either of them has ever had, now has, or may hereafter have against each other, upon  or by any reason of any matter, cause or thing up to the date of this Agreement, including but not limited to, claims against each other's property, it being the intention of the parties that henceforth there shall exist as between them only such rights and obligations are specifically provided for in this Agreement.



-2-

4.    Except as herein provided, the Husband and Wife each warrant, represent and agree that he or she will not hereafter contract or incur any debt, charge or liability whatsoever in the other's name or for which the other, his or her legal representatives or his or her property or estate will or may become liable; and, except as herein provided, the Husband and Wife further covenant at all times to hold the other free, harmless and indemnified from and against all such debts, charges or liabilities hereinafter contracted or incurred by him or her in breach of the provisions of this paragraph, and from any and all attorneys' fees, costs and expenses incurred by the Husband or the Wife as a result of any such breach.

5.    The Husband and Wife agree that, in executing this Agreement, there have not been made, and they have not relied upon, any promises, warranties, or representations except as expressly contained herein.

6.    There are annexed hereto and hereby made a part hereof, Exhibit A- B. The Husband and Wife agrees to be bound by, and to perform and carry out all the terms of the said Exhibits to the same extent as if each of the said Exhibits was fully set forth in the text of this Agreement.

7.    Both the Husband and the Wife acknowledge and confirm that they willingly accept the provisions of this Agreement and deem it to be a fair and reasonable resolution of all issues and disputes with full consideration of the circumstances of each party and all factors required to be considered pursuant to M.G.L. c. 208, §34. Furthermore, each party acknowledges and confirms that no part of this Agreement is a product of fraud, duress or coercion and that each has freely had the opportunity to negotiate the terms of this Agreement to their respective satisfactions.

-3-

8.    The Husband and Wife represent, warrant and acknowledge that each has fully and completely described, disclosed and valued his or her income, assets, and liabilities to the other party to the best of their knowledge and ability. Financial statements have been prepared and exchanged pursuant to Probate Rule 401. The Husband and Wife each warrant that neither one of them is holding any undisclosed assets. Each party has carefully considered the current assets and income, financial resources, liabilities and expenses of the other and of themselves.

9.    A duplicate original of this Agreement may be submitted to the Court and be incorporated in the judgment of divorce. Notwithstanding said incorporation, the Agreement shall not be merged into the judgment of divorce, but shall survive the same and be thereafter forever binding upon the Husband and Wife except for issues relating to the children which are merged with the judgment of divorce and over which the Court retains the power of modification.

10.    If either the Husband or Wife shall commit a breach of any of the provisions of this Agreement, and legal action shall be reasonably required to enforce such provisions and be instituted (by assertion of a claim, counterclaim or affirmative defense) by the other, the party in breach, as may be determined by a court of competent jurisdiction, shall be liable for all court costs and reasonable counsel fees incurred by the other party in instituting and prosecuting such action, or part thereof for which the breach was found. Breach shall include, but not be limited to, attempts to modify this Agreement contrary to its terms.

-4-

11.   The failure of the Husband or of the Wife to insist in any instance upon the strict performance of any of the terms hereof shall not be construed at a waiver of such term or terms for the future, and such terms shall nevertheless continue in full force and effect.

12.   In the event any part of this Agreement shall be held invalid, such invalidity shall not invalidate the whole Agreement but the remaining provisions of this Agreement shall continue to reflect fairly the intent and  understanding of the parties in executing this Agreement.

13.   The Husband and the Wife agree to execute any and all documents requested of each other which are executory of this Agreement. Failure to do so will constitute a breach thereunder.

14.   This Agreement shall be construed and governed according to the laws of the Commonwealth of Massachusetts.

15.   This Agreement shall not be altered or modified except by an instrument signed and acknowledged by the Husband and Wife or as provided by law.

Richard Livingston

Margaret Livingston



-5-

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.                                              December 14, 1998

Then personally appeared the above-named Richard Livingston and acknowledged the foregoing instrument to be her free act and deed before me.

Notary Public  Danielle E. D. Bedlich
My Commission Expires: 11-25-2000

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.                                              December 14,1998

Then personally appeared the above-named Margaret Livingston and acknowledged the foregoing instrument to be her free act and deed before me.

Notary Public, ELLIOT M. SHERMAN
My Commission Expires:  4/8/99

-6-

EXHIBIT A

EQUITABLE DISTRIBUTION OF MARITAL ASSETS IN

ACCORDANCE WITH M.G.L. CHAPTER 208, § 34

A. MARITAL HOME

1. The Husband and the Wife own as tenants by the entirety the real estate located at 15 Quarry Lane, Milton, Massachusetts, consisting of a single family house. The Wife shall continue to have sole use and occupancy of the martial home which shall remain the primary home of the wife and children.

2. The parties agree that the marital home will be put on the market at a price to be arrived at by the average of three prices suggested by real estate brokers selected by the parties and sold at the soonest to occur of the following events:

> 1. The emancipation of the youngest child as herein defined.
>
> 2. The death of the Wife.
>
> ~~3. The remarriage of the Wife.~~
>
> 4. The Wife's desire to sell the marital home.

At the time of the sale of the marital home, the Husband shall be or sold to wife credited for any principal amounts he or she has paid into the mortgage first & second from the date of the and the Agreement parties will split equally the remaining net proceeds. until the property is sold

3. The Husband agrees to the Wife having the right to purchase the Husband's share of the marital home at any time at or prior to any of the events referenced in paragraph two above occurring at the property's fair market value less mortgages, to be determined by the average of three appraisals, one selected by each party and the third selected by the two selected by the parties.

~~This is the event of a refinance, the wife waives a right~~ and any subsequent refinancing pursuant to paragraph 8 of this Exhibit.

-7-

4. Upon the occurrence of any of the events requiring the home to placed upon the market referenced in paragraph two above, and the Wife not wishing to purchase the Husband's share, the Husband shall have the right to purchase the Wife's share at the property's fair market value to be determined by the average of three appraisals, one selected by each party and the third selected by the two selected by the parties. Upon the first to occur of the events set forth in paragraph 2, the Wife will have ~~fifteen~~ 30 days to notify the Husband as to her intentions to purchase his share. If the Wife elects not to purchase the Husband's share, the Husband will have ~~fifteen~~ 30 days to notify the Wife as to his intentions to purchase her share, failing which, the House will be place upon the open market for sale to a third party in accordance with the terms of this Exhibit.

5. Subject to the debt provisions of subparagraph 5 of this Exhibit, the Husband will be responsible for the timely payment of the principal and interest on the first mortgage on the marital home, the real estate taxes and the homeowner's insurance.

6. ~~Instead~~ At the time of the sale, the parties will agree upon a listing broker and the terms of the sale, failing which they will resort to the court for resolution of those issues.

7. Other than the costs set forth in subparagraph six above the wife will be responsible for all other payments relating to the marital home except for capital improvements and major repairs regarding which the parties will consult each other and agree upon a contractor and a price for which they will each be responsible for 50%. Neither party shall unreasonably withhold his agreement to such improvements and repairs.



-8-

B. RETIREMENT VEHICLES

    1. The parties have the following retirement Vehicles:

       Husband: MBTA Retirement Fund

             MBTA Deferred Compensation Plan- Copeland Companies

       Wife: Massachusetts Teacher's Retirement

           Security First 403(b) Tax Deferred Annuity Plan

    The parties agree to equalize their interests in these retirement plans by Qualified Domestic Relations Order.("QDRO")

    2. The Court will retain jurisdiction over this matter to enter appropriate QDRO's in forms acceptable to the plan administrators.



## C. MOTOR VEHICLES

1. The Husband will transfer to the Wife his interest in the Subaru Station wagon ~~which was the marital vehicle~~.

2. The Wife waives any interest she may have in any vehicle currently owned by the Husband.

## D. PERSONAL PROPERTY

1. The Husband and the Wife ~~will attempt to finalize the division of~~ *have divided* their *tangible* personal property ~~form lists drafted by each, any items not agreed upon will be submitted to the Court or a mediator for decision.~~ *except for the items referred to in Exhibit I which will be decided by the judge and the following items which the wife will transfer to the Husband within ten days of the execution of this Agreement:*

(1) *The antique kitchen table in the cellar*
(2) *The Husband's clothes which remain in the house*
(3) *One glass front book case*
(4) *Desk in the cellar*
(5) *Husband's tools* ✱

*P.T.A ETA* 2. *The Husband agrees to give the Wife the* (✱ *in his possession simultaneous with the transfer of the items listed in paragraph one to him.*

3. *In all other respects, neither party will make a claim for the division of personal property hereafter and the property in the custody or possession of a party shall belong to that party.*

✱
(6) *Husband's ski ~~boots~~ boot*
(7) *Metal clothes cabinet*
(8) *½ the Christmas Decorations*
(9) *½ the pots and pans*
(10) *½ the Tupperware*
(11) *the 4 water colors in the living room*
(12) *Mrs. King's Bedroom Chandelier into the attic*
(13) *The Dome light in the attic*

(14) *1 piece of wedgewood*
(15) *1 hummel*



E. DEBT

1. The parties will continue to be ~~jointly~~ responsible for ~~the~~ joint *the payment of ½ each of the* credit card debt which is comprised of the ~~first of~~ America, First USA, ~~and~~ *Bravo,* Household Credit ~~accounts.~~ *and greenwood Trust (Discover) accounts.* 

2. The parties will remain individually responsible for the credit card debt they have incurred individually.

3. The Wife will be responsible for her student loans ~~and the Bank of Boston loan which she took out with her moth~~er.

4. Each of the parties will be responsible for whatever amounts they *and Belle Solloway* owe Dr. Solomon Levin, per the temporary order of this Court.

5. At the Wife's election, the Husband agrees to cooperate with her in refinancing the marital home to consolidate the first and second mortgages, the outstanding credit card debt and the Bank of Boston loan. ~~Providing~~ *After said* *refinancing, the Husband will pay the principal and interest* ~~that the payment of any refinanced debt does not exceed $310.00 per~~ *reflective of the first mortgage balance which is presently approx.* ~~week, the Husband will be responsible for making this payment which is~~ *$116,000 and the principal + interest reflective of one-half of the* ~~reflective of principal and interest.~~ He will also be responsible for the taxes *INSURANCE* *credit card debt (presently approx. $12,000) and the one half of the* ~~and homeowners insurance. Other than these costs, the Wife will be~~ *second mortgage (presently approx. $7,000).* ~~The wife will be responsible~~ *responsible for all other payments relating to the marital home except for* ~~tax payment~~ *The wife will be responsible for the other half of the* *capital improvements and major repairs. With respect to capital* ~~improvements and major repairs, the parties will consult each other and~~ *payment reflective of the other half of credit card debt* *(presently approx. $12,000) and the other half of the second* ~~agree upon a contractor and a price for which they will be equally~~ *mortgage (presently approx. $7,000).* ~~responsible.~~

~~6. If the amount of the payment on the refinanced debt is in excess of $310 per week, the Wife will have the option of being responsible for any overage or of electing not to refinance.~~

*▪ Each will hold the other harmless and indemnify the other for the payment of one half of this debt.*

-11-

$6$. Both parties shall promptly cooperate and submit all needed loan applications and documents needed to pursue or obtain such refinancing and the Husband agrees to submit said application to the MBTA Employees Credit Union.



EXHIBIT B

ALIMONY

The Husband and the Wife each waive any rights each may have to receive alimony from the other now and in the future.



EXHIBIT C

CHILD CUSTODY, VISITATION AND SUPPORT

*See shpulatic f the partia attdoo hearb.*

~~A.    The Husband and the Wife will have~~ joint legal custody of the minor children who will make their primary home with the Wife.

B. The Husband will continue to visit with the Children according to the Visitation schedule currently in place, subject to changes agreed upon by the parties, after consultation with each other, or at the direction of the court appointed guardian ad litem. The Court's order with the respect to the appointment of Belle Sulloway as guardian ad litem will be incorporated ~~into this Agreement and into the Judgment of Divorce.~~

A. In lieu of child support, the Husband will continue to make the *PAC. 5 -* payments with respect to the marital home set forth in Exhibit A until the first to occur of the emancipation of the youngest child or the sale of the marital home. If the marital home is sold while the children or either of them are unemancipated, the Husband will pay child support in accordance with the Massachusetts child support guidelines.

B. Emancipation of the minor children under the within agreement shall be deemed to take place upon the earliest happening of any of the following contingencies:



-14-

1.    Attaining the age of eighteen (18) or three (3) months after graduation from High School, whichever occurs later, unless a child is then currently enrolled as a full-time student at an accredited college or university;

2.    Graduation from four years of higher education, but no later than the youngest child's twenty-third birthday;

3.    Entry into the military service;

4.    Marriage of the children;

5.    Death of the children;

6.    Engaging in full time, permanent employment after the age of eighteen (18), except that full-time employment during vacation and summer periods shall not be deemed emancipation. Such emancipation shall be deemed to terminate upon cessation by the child from full-time employment; thereafter, emancipation shall be determined in accordance with the other applicable provisions of this section.

C.    Neither party shall permanently remove the Children from the Commonwealth of Massachusetts without the express consent of the other or by further order of the ~~Plymouth~~ Norfolk Probate and Family Court.

E.    Neither party shall attempt to, or condone any attempt, to injure or impede the respect or affection of the children for the other, but on the contrary shall, at all times, encourage and foster in the children respect and affection for both parents. Each party shall exert every reasonable effort to maintain free access and unhampered contact between the children and the other party and neither shall do anything which may hamper the free and natural development of the children's love and respect for the other.



-15-

EXHIBIT D

HEALTH INSURANCE & UNINSURED MEDICALS

A.    The Husband and Wife shall maintain the family plan health insurance available to her through her employer for the benefit of the *us long as the other spouse is* unemancipated children and the other spouse with the Husband's *eligible for same at no* insurance being the primary carrier and the Wife's being the secondary *additional co* carrier, so as to eliminate or minimize uninsured medicals, *providing this* **WIFE**

B.    The Husband and the will equally divide the cost of uninsured medical and dental expenses for the Children from the date of the separation (August, 1997), with each receiving credit for what they have already paid. Each will be responsible for their own uninsured medical and dental expenses.

C.    To the extent practical and in those cases not involving emergency, neither parent shall incur extraordinary or major expenses in the child's behalf without first notifying the other of his or her intentions in this regard and obtaining the other's approval, which approval shall not be unreasonably withheld.

D.    It shall be the responsibility of the uninsured party to deal directly with the insured party's plan or group, to complete any and all applications, and to make any and all arrangements with said plan or group; however, the insured party shall cooperate and do all things necessary to assist the uninsured party to obtain any such health insurance.

*insurance is available to the wife at no cost.*



-16-

E.    The Husband and the Wife shall cooperate with each other in the processing of all claims for benefits due under the health insurance policy, and each shall execute and deliver whatever documents are necessary to effect the within covenant.

F. The party herinabove required to provide said insurance coverage shall provide to the other party proof of said coverage upon ten (10) days notice.



-17-

EXHIBIT E

LIFE INSURANCE

1. The Husband agrees to maintain his present life insurance policy *having a present death benefit of $250,000* or its successor in the amount sufficient to insure his obligations under this *a Trust for the benefit of the* *with a Trustee or Trustees* Agreement with ~~the Wife and~~ Children as beneficiaries until the youngest *mutually agreeable to both parties,* child is emancipated and to provide the Wife with evidence of such coverage upon request.

2. The Wife agrees to maintain her existing life insurance/with the *with a present death benefit of $5,000* Husband as beneficiary until the youngest child is emancipated and to provide the Husband with evidence of such coverage upon request.

3. The Husband and the Wife shall at all times keep said insurance policies in full force and effect, shall pay all premiums, dues and assessments thereon and shall upon request transmit to the Wife copies of receipts showing that such dues, premiums and assessments have been paid.

4. The Husband and the Wife shall not borrow against such policies, nor in any manner pledge or encumber the same, so as to reduce the death benefits below the amounts required by this Agreement without the prior consent of the other.



-18-

5. If the Husband or the Wife fail to pay the premiums on the required insurance and failure to pay such premiums would reduce the aggregate death benefits below the amount required by this Agreement from time to time, each shall have the option to pay same, or to convert the policies or any of them into paid-up insurance, or each may surrender and cancel the policies or any of them and receive cash payment thereon.

6. If the policies are not in full force and effect at the time of the Husband or the Wife's death, or if the Husband or the Wife being then entitled to receive full proceeds thereof, does not receive the same, then notwithstanding anything to the contrary contained in this Agreement, the Husband or the Wife will have a creditor's claim against the other party's estate for the difference between the face amount of the policies to be required to be maintained under this Agreement at the time of the Husband or the Wife's death and the amount he or she actually receives thereof upon such death, less any amounts he or she may have received upon surrender and cancellation of these policies,



-19-

EXHIBIT F

FINANCIAL DISCLOSURE

The parties hereby warrant and represent that they have fully and completely disclosed all income well as liabilities and debts owed, on the financial statements each has filed with the Court to the best of his or her knowledge and ability and that the representations contained therein may be reasonably relied upon by the other.

The failure of either party to disclose any asset, liability or income presently known to them or their respective financial statements shall be deemed to be a fraudulent representation sufficient to justify the voiding of contractual obligations.



-20-

EXHIBIT G

ATTORNEY'S FEES

A.     The parties shall each pay their own legal fees and expenses incurred in connection with the negotiation and preparation of this Agreement and all related matters.

B.     If either the Husband or the Wife shall default after written notice in any of his or her obligations hereunder, the party in default shall be required to pay any and all reasonable counsel fees and expenses incurred by the other party in enforcing any of the terms and provisions of this Agreement.



-21-

EXHIBIT H

TAX TREATMENT

1.    The Husband and the Wife shall alternate claiming the

dependency exemptions for the minor children, for federal and state tax

*The wife shall be entitled to the 1997 dependency deduction*

purposes. The Husband shall claim the children in 1998 and the Wife shall

claim the Children in 1999.

2. The Husband shall be entitled to the deduction
relating to the interest and taxes on the marital home
for 1997. From 1998, on, each of the parties will be
entitled to one-half of the deduction for the interest
and taxes on the marital home. MORTGAGE PAYMENT

* and the Husband will execute any form necessary to
complete this.



-22-

# THE COMMONWEALTH OF MASSACHUSETTS
## THE TRIAL COURT

PROBATE FAMILY COURT DEPARTMENT

PROBATE & FAMILY COURT
No. _97D-1237_

NORFOLK DIVISION ___Margaret Livingston___ , Plaintiff

**STIPULATION
OF THE
PARTIES**

v.

___Richard Livingston___ , Defendant

It is hereby agreed by the parties with the advice of counsel that the following stipulation shall be made an order or
judgment of this court:

1. The wife will have legal and physical custody of the minor children who will make their primary home with her.

2. The husband will continue to visit with the children according to the visitation schedule currently in place, AS IN THE ATTACHED EXHIBIT "A"

3. The Court's order with respect to the appointment of Bette Solloway as guardian ad litem for the children will be incorporated in the Judgment of Divorce Nisi, AS PER ATTACHED EXHIBIT HERETO AS "B"

Plaintiff _Margaret Livingston_

Defendant _Richard Livingston_

Plaintiff's Attorney _Elliott Sherman_

Defendant's Attorney _Danielle deBenedictis_

Date: _12/14/98_

Witness: _____

IH-1

EXHIBIT "A"

2.     The daughter (Siobhan) and the husband will visit with each other
       as agreed upon between them.  The husband agrees to participate in
       therapy with the daughter, unless the daughter objects to such
       participation, with a therapist to be chosen by the clinical G.A.L.
       In order to facilitate communicate between the husband and
       daughter.

*when he will pick Brendan up the after school at the wife's home.*

3.     During the school year the husband will visit with the son (Brendan)
       every other weekend from Friday after school until Monday
       morning when the husband will return Brendan to school.  If a
       holiday falls on a Monday the husband will return Brendan to the
       marital home by 7:30p.m.

4.     During the school year, the husband will visit with Brendan every
       Tuesday after school when the husband will pick up Brendan at
       school until 7:30a.m. during the school year, and 8:30 in the
       summer when the wife will pick Brendan up at the husbands home.

-1-



5.    During the school year, on Thursday when the husband does not have Brendan for the weekend, he will also visit with Brendan from after school until 7:30p.m. during the school year, and 8:30 in the summer, or from after any activity Brendan has which the husband shall accommodate. The husband will return Brendan to the marital home after such visits.

6.    Subject to the foregoing the husband and the wife will equally divide the time Brendan is not in school by alternating Christmas, New Years, Thanksgiving and Easter as well as the February and Spring school vacation. They will also, subject to paragraph "7." below, equally divide the summer vacation.

7.    During the time Brendan is with the father he will visit with the mother according to the same schedule that he visits with father. When Brendan is with each of the parents during the summer each parent will be on vacation spending time with Brendan or provide a five day program for Brendan. Anytime either parent is unable to personally be with Brendan or not in a program of camp or school, the other parent will have the presumptive right to be with Brendan, rather than his being left with other caretakers.

8.    Each of the parties may take the children outside of the Commonwealth of Massachusetts for purposes of vacation. Before any such trip the departing parent will give the other parent the home, address and phone number of wherever they will be.

9.    Notwithstanding any contrary provision of this order, of the foregoing Brendan will be with the father for father's day, the mother for mother's day and will equally divide his time between the mother and father on his birthday.

10.    When Brendan is with the husband or the wife the parent with whom Brendan is staying shall provide the other with the name address and phone number of where to reach the child.

11.    The husband and the wife will limit his/her telephone calls to Brendan when he is not with them the call of one per day. Brendan will be free to contact the husband and the wife whenever he wishes and will be encouraged to do so.

-2-



12.  The parties will be flexible in changing-schedule to accommodate Brendan's activities and Brendan's access to each of the parties extended families. Anytime that either parent is scheduled to be with Brendan which he/she agrees to forego in the spirit of cooperation shall be made up within the next week.

13.  Both parents shall be consulted and have input into the choice of elected physical and mental medical care of the children and neither shall unreasonably with hold their consent to same.

14.  The parties shall immediately notify each other of any and all illnesses and problems that afflict the children and each parent shall have the right to visit his or her sick child at the home of the other as often within reason, as that child shall wish.

15.  In the event of emergency affecting the children both parents will notify the other immediately.

16.  The parties shall participate in all school conferences schedules for the children and shall share in communicating the dates and times and places for such conferences and meetings.

17.  The husband and wife will cooperate with each other with respect to the children and will have continued mutual responsibility and involvement in all decisions, regarding the happiness and welfare of the children. In furtherance of said objective, the husband and wife shall do all they can to raise the children and to work together to solve all problems which may affect the children in matters of education and medical care as well as their social, emotional and spiritual development.

18.  Neither the husband and the wife shall make derogatory remarks about the other and particularly in front of the children nor and/or discuss pertinent decision making in from of the children.

19.  Any dispute between the parties relative to the issues addressed here under shall in the first instance, be refer to the Clinical G.A.L. appointed pursuant to paragraph "20." below.

-3-



20.   The parties shall hereafter submit disputes regarding visitation, and any other disputes concerning matters addressed by this temporary order, to Belle Soloway, Esq. of 30 Eastbrook Road, Suite 301, Dedham, Mass., (telephone no. 781-326-8277) who is herein designated and appointed as the Clinical GAL for such purposes. The parties shall submit all such disputes to the Clinical GAL prior to their filing of any motion or complaint with this Court relative to said issue(s), the Clinical GAL shall hear from the parties and meet with, or hear from any third parties who, in her opinion, would be necessary and helpful to her in his role as Clinical GAL. With regard to any issue being presented to her, she shall provide to each party a written recommendation(s) with regard to any such issue being mediated. His/her written recommendations(s) with regard to any issue being presented shall be given to the parties and shall, immediately upon their receipt of said recommendation(s), be binding upon them until this Court enters, by motion or otherwise, pursuant to a pending or properly filed and served complaint, an order or judgment altering, modifying or terminating said recommendation(s). At this time of any such review, the Court shall also consider an award of fees and expenses of the proceedings before the Clinical GAL and the Court proceeding in the event that the Court concludes that a party was acting unreasonably or not in good faith or that the basis for an objection, or the opposition to an objection, to the Clinical GAL's written recommendation(s) lacked merit.



**Commonwealth of Massachusetts**
**The Trial Court**
**Probate and Family Court Department**

Norfolk Division

Docket No.97D1237-D1

### Margaret Livingston, Plaintiff

vs.

### Richard Livingston, Defendant

## APPOINTMENT OF GUARDIAN AD LITEM

The parties shall hereafter submit disputes regarding visitation, and any other disputes concerning matters addressed by this temporary order, to Belle Soloway, Esq. of 30 Eastbrook Road, Suite 301, Dedham, Mass., (telephone no. 781-326-8277) who is herein designated and appointed as the Clinical GAL for such purposes. The parties shall submit all such disputes to the Clinical GAL prior to their filing of any motion or complaint with this Court relative to said issue(s), the Clinical GAL shall hear from the parties and meet with, or hear from any third parties who, in her opinion, would be necessary and helpful to her in his role as Clinical GAL. With regard to any issue being presented to her, she shall provide to each party a written recommendation(s) with regard to any such issue being mediated. His/her written recommendations(s) with regard to any issue being presented shall be given to the parties and shall, immediately upon their receipt of said recommendation(s), be binding upon them until this Court enters, by motion or otherwise, pursuant to a pending or properly filed and served complaint, an order or judgment altering, modifying or terminating said recommendation(s). At this time of any such review, the Court shall also consider an award of fees and expenses of the proceedings before the Clinical GAL and the Court proceeding in the event that the Court concludes that a party was acting unreasonably or not in good faith or that the basis for an objection, or the opposition to an objection, to the Clinical GAL's written recommendation(s) lacked merit.

The Clinical GAL shall be paid at her normal hourly rate, including a requested retainer if any, and the cost thereof, are to be paid by the parties in accordance with the following percentages: 50% by the father, and 50% by the mother, unless the Court, by subsequent order, may determine otherwise. ~~...~~

July 16, 1998
Date

Robert W. Langlois, Justice
Norfolk Probate and Family Court

IN THE EVENT THAT EITHER PARTY TELEPHONES THE GAL MORE THAN TWICE PER WEEK (AT A MAXIMUM OF 20 MINS. PER CALL THERE SHALL BE A REBUTTABLE PRESUMPTION THAT SUCH PARTY SHALL PAY FOR ANY TIME IN EXCESS OF SUCH CALLS.

**Tab B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

01-11602-JNF

CHAPTER 7

)
)
IN RE RICHARD L. LIVINGSTON )            ORDER
)
)

Upon consideration of the motion of Margaret Clifford for relief from the automatic stay of
proceedings, a hearing having been held on said motion and all parties having been notified of
said hearing, and with good cause appearing therefore, this court makes its ORDER as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Automatic Stay in the
above Bankruptcy proceeding is vacated and extinguished for all purposes as to the Movant, her
assignees and/or successors in interest, and the Movant may proceed to assert her rights against
the Debtor within the divorce proceeding between the Debtor and Clifford and more fully
described in Livingston v. Livingston, Norfolk County Probate and Family Court, Docket No.
97D1237-D1 by means any means necessary, all pursuant to applicable state and federal law.

IT IS FURTHER ORDERED that Clifford is relieved from the Rule 4001 (a) (3) stay, such that
she is allowed to proceed against the Debtor immediately upon the Court's signing of this Order.

_April 24, 2001_
Date

_Joan N. Feeny_
Bankruptcy Judge

DOCKETED

**Tab C**

Commonwealth of Massachusetts
The Trial Court
Probate and Family Court Department

NORFOLK DIVISION

DOCKET NO: 97D1237-D1

Margaret Clifford, Plaintiff

vs.

Richard Livingston, Defendant

JUDGMENT OF CONTEMPT
(Complaint filed January 24, 2000)

After hearing, it is Adjudged that:

1. The Court finds that as a result of the former husband's filing for bankruptcy, it is extremely unlikely that any lender will furnish the funds necessary for the parties to refinance the first and second mortgages and to pay marital debt.

2. The Court further finds that had the refinance taken place pursuant to a prior order of this Court, the former wife would have been relieved from paying the second mortgage in the amount of $180 per month ($42 per week).

3. The Court finds that pursuant to the separation agreement of the parties, the former husband agreed to pay the first mortgage in the amount of $1,300 per month ($300 per week) in lieu of child support.

4. Due to the complications created by the former husband's filing for bankruptcy, from which relief was given by the Bankruptcy Court from the automatic stay, the former husband's child support obligation shall be specifically articulated to avoid further confusion and multiple court appearances, which have occurred to date.

5. Accordingly, commencing Friday, May 25, 2001, and on each and every Friday thereafter, the former husband shall pay the sum of $342 per week for support of the two unemancipated children. (This sum is equivalent to the payment of the first and second mortgages with respect to the former marital home in which the former wife and the two unemancipated children reside.)

6. The aforesaid child support payments shall be made payable to the Commonwealth of Massachusetts and shall be sent to Department of Revenue.

Box 9140, Boston, MA 02205-9140, by means of an implemented wage assignment.

7.    If for any reason the wage assignment is not implemented, it shall be defendant's responsibility to pay the aforesaid child support directly to the Department of Revenue each and every Friday without excuse and without delay.

8.    Counsel fees in the amount of $3,500 are hereby awarded to the plaintiff pursuant to the provisions of G.L. chap. 208, sec. 38.

9.    The aforesaid counsel fees shall be deducted from the former husband's share of the net proceeds arising from the sale of the former marital home.

10.    The former wife shall have the right to refinance the first and second mortgages with respect to the former marital home in order to satisfy the existing first and second mortgages and to pay outstanding marital debt if she so elects.

11.    The former husband shall not be required to sign any documents in connection with the wife's effort to refinance the outstanding mortgages and existing marital debt.

12.    The former wife shall also have the right, at her sole option, to file for bankruptcy in order to eliminate the marital debt as the former husband is seeking to do.

__May 24, 2001__
    Date

                               Justice

**Tab D**

**CONVERTED**

### United States Bankruptcy Court
### District of Massachusetts (Boston)
### Bankruptcy Petition #: 01-11602

*Assigned to:* Judge Joan N. Feeney
Chapter 7
Previous chapter 13
Voluntary
No asset

*Date Filed:* 03/07/2001
*Date Converted:* 04/04/2001
*Date Terminated:*
01/10/2002
*Date Discharged:*
07/26/2001

**Richard L. Livingston**
149 Warren Ave.
Milton, MA 02186
SSN: xxx-xx-0332
*Debtor*
*aka*
**Richard Lawrence Livingston**

represented by **William E. Gately, Jr.**
Law Office Of William E. Gately, Jr.
400 Washington St.
Braintree, MA 02185
(781) 848-1200

**Joseph G. Butler**
Barron & Stadfield
100 Cambridge Street
Suite 1310
Boston, MA 02114
617-723-9800
*Trustee*

| Filing Date | # | Docket Text |
|---|---|---|
| 03/07/2001 | 1 | Voluntary Chapter 13 Petition ( Filing Fee $ 185.00 Rcpt # ) missing documents: Chapter 13 Plan due on 4:30 3/22/01 ; Proof of Claim (gov. units only) Deadline: 4:30 9/4/01 (mjv) (Entered: 03/08/2001) |
| 03/07/2001 | | Matrix. (mjv) (Entered: 03/08/2001) |
| 03/07/2001 | 2 | Disclosure of Compensation filed by Attorney William E. Gately for the Debtor in the amount of $ 1100.00. (mjv) (Entered: 03/08/2001) |
| 03/08/2001 | 3 | Order to Update Petition. Incomplete Filing; missing documents: Chapter 13 Plan ; Missing Documents Due 4:30 3/23/01 (mjv) (Entered: 03/08/2001) |
| 03/19/2001 | 4 | Installment Fee Paid in full. ( Receipt #: 464063 Amount: $ 185.00) (mjv) (Entered: 03/19/2001) |

| 03/28/2001 | 5 | Motion By Debtor Richard L. Livingston To Extend Time To File Chapter 13 Plan To April 3, 2001 c/s. (pkn) (Entered: 03/28/2001) |
| 03/28/2001 | 6 | ENDORSEMENT ORDER: Granting [5-1] Motion To Extend Time To File Chapter 13 Plan To April 3, 2001 by Richard L. Livingston ;Chapter 13 Plan due on 4:30 4/3/01 MOTION ALLOWED. (pkn) (Entered: 03/29/2001) |
| 03/28/2001 | | Update Deadline On Chapter 13 plan due on 4:30 4/3/01 (pkn) (Entered: 03/29/2001) |
| 04/04/2001 | 7 | Motion by Debtor To Convert Case From Chapter 13 to Chapter 7 c/s (pkn) (Entered: 04/04/2001) |
| 04/04/2001 | 8 | ENDORSEMENT ORDER: [7-1] Motion To Convert Case From Chapter 13 to Chapter 7 by Debtor, Trustee Doreen B. Solomon terminated. MOTION ALLOWED (pkn) (Entered: 04/05/2001) |
| 04/04/2001 | | Update Deadline On Missing Documents due on 4:30 4/20/01 (pkn) (Entered: 04/05/2001) |
| 04/05/2001 | 9 | Order to Update Petition. Incomplete Filing; missing documents: ; Missing Documents Due 4:30 4/20/01 (pkn) (Entered: 04/05/2001) |
| 04/05/2001 | 10 | Certificate of Appointment and Acceptance of Trustee Joseph Butler and Fixing of Bond. (lml) (Entered: 04/05/2001) |
| 04/05/2001 | | First Meeting of Creditors scheduled For 10:30 5/16/01 At 10 Causeway Street, Room 255-B Last Day To Oppose Discharge: 4:30 7/16/01 Notice to be mailed within two weeks. (lml) (Entered: 04/05/2001) |
| 04/09/2001 | 11 | Motion By Creditor Margaret Clifford For Relief from Automatic Stay ( Filings For Judgment Dedham District Court) Without Certificate of Service. FFP (pkn) (Entered: 04/09/2001) |
| 04/11/2001 | 12 | Notice of Appearance And Request For Service Of Notice By Nina M. Parker for Creditor Margaret Clifford. (pkn) (Entered: 04/11/2001) |
| 04/11/2001 | 13 | Amended Motion by Creditor Margaret Clifford For Relief from Automatic Stay ( Proceed In Probate and Family ) , For Expedited Determination Re: [13-1] RE: [11-1] Motion For Relief from Automatic Stay ( Filings For Judgment Dedham District Court) by Margaret Clifford c/s. (pkn) (Entered: 04/11/2001) |
| 04/11/2001 | 14 | Motion By Debtor Richard L. Livingston To File Amended Matrix |

| | | |
|---|---|---|
| | | and Schedule F [1-1] Voluntary Petition, [0-0] Matrix c/s (pkn) (Entered: 04/12/2001) |
| 04/12/2001 | 15 | ENDORSEMENT ORDER: [13-2] Motion For Expedited Determination Re: [13-1] RE: [11-1] Motion For Relief from Automatic Stay ( Filings For Judgment Dedham District Court) by Margaret Clifford REQUEST FOR EXPEDITED DETERMINATION GRANTED. (pkn) (Entered: 04/12/2001) |
| 04/12/2001 | | Hearing Re: [13-1] Motion For Relief from Automatic Stay ( Proceed In Probate and Family ) by Margaret Clifford set For 10:00 4/24/01 at Courtroom 1, Objections to Motion Due On: 12:00 4/20/01 (pkn) (Entered: 04/12/2001) |
| 04/12/2001 | 16 | Notice of Hearing Creditor Margaret Clifford [13-1] Motion For Relief from Automatic Stay ( Proceed In Probate and Family ) by Margaret Clifford set For 10:00 4/24/01 at Courtroom 1, Objections to Motion Due On: 12:00 4/20/01 (pkn) (Entered: 04/12/2001) |
| 04/12/2001 | 17 | Certificate Of Service By Creditor Margaret Clifford Of [16-1] Hearing Notice by Margaret Clifford . (pkn) (Entered: 04/12/2001) |
| 04/12/2001 | 18 | ENDORSEMENT ORDER: [14-1] Motion To File Amended Matrix and Schedule F [1-1] Voluntary Petition, [0-0] Matrix by Richard L. Livingston MOTION ALLOWED. (pkn) (Entered: 04/13/2001) |
| 04/18/2001 | 19 | Emergency Motion By Debtor To Extend Time To File Objection To Motion and Amended Motion For Relief , To Continue Hearing Presently Scheduled 4/24/01 On: ( [13-1] Motion For Relief from Automatic Stay ( Proceed In Probate and Family ) by Margaret Clifford set For 10:00 4/24/01 at Courtroom 1, Objections to Motion Due On: 12:00 4/20/01 ) , For Expedited Determination Re: c/s (pkn) (Entered: 04/18/2001) |
| 04/19/2001 | 20 | ENDORSEMENT ORDER: [19-3] Motion For Expedited Determination Re: by Debtor [19-2] Motion To Continue Hearing Presently Scheduled 4/24/01 On: ( [13-1] Motion For Relief from Automatic Stay ( Proceed In Probate and Family ) by Margaret Clifford set For 10:00 4/24/01 at Courtroom 1, Objections to Motion Due On: 12:00 4/20/01 ) by Richard L. Livingston, [19-1] Motion To Extend Time To File Objection To Motion and Amended Motion For Relief by Richard L. Livingston MOTION ALLOWED IN PART. THE TIME WITHIN WHICH TO FILE A RESPONSE IS EXTENDED UNTIL APRIL 23, 2001 AT NOON. THE HEARING DATE SHALL REMAIN UNCHANGED. (pkn) (Entered: 04/19/2001) |
| 04/23/2001 | 21 | Motion Opposing By Debtor To [11-1] Motion For Relief from |

| | | |
|---|---|---|
| | | Automatic Stay ( Filings For Judgment Dedham District Court) by Margaret Clifford . c/s (pkn) (Entered: 04/23/2001) |
| 04/23/2001 | 22 | Memoranda By Debtor In Support Of [21-1] Objection Debtor To [11-1] Motion For Relief from Automatic Stay ( Filings For Judgment Dedham District Court) by Margaret Clifford . by Richard L. Livingston . (pkn) (Entered: 04/23/2001) |
| 04/23/2001 | 23 | Post Chapter 13 Creditors by Debtor (pkn) (Entered: 04/23/2001) |
| 04/24/2001 | | Hearing Held Re: [13-1] Motion For Relief from Automatic Stay ( Proceed In Probate and Family ) by Margaret Clifford . (pkn) (Entered: 04/24/2001) |
| 04/24/2001 | 24 | ORDER: [13-2] Motion For Expedited Determination RE: [13-1] Amended Motion For Relief From Stay [11-1] Motion For Relief from Automatic Stay by Margaret Clifford #13 GRANTED. SEPARATE ORDER ENTERED. (pkn) (Entered: 04/24/2001) |
| 04/24/2001 | 25 | ORDER: Granting [13-1] Motion For Relief from Automatic Stay ( Proceed In Probate and Family ) by Margaret Clifford . (pkn) (Entered: 04/24/2001) |
| 04/26/2001 | 26 | First Meeting Certificate of Mailing. (auto) (Entered: 04/26/2001) |
| 05/16/2001 | | First Meeting Held and Examination of Debtor. (kmp) (Entered: 05/25/2001) |
| 06/05/2001 | 27 | Chapter 13 Trustee's Report and Account and Request for Debtor's Discharge Filed and Accepted. (pkn) (Entered: 06/06/2001) |
| 06/07/2001 | 28 | Order Pursuant to 11 U.S.C. Section 350(a), the Court hereby discharges the Chapter 13 Trustee. (pkn) (Entered: 06/08/2001) |
| 07/26/2001 | 29 | Order Discharging Debtor Richard L. Livingston (pkn) (Entered: 07/26/2001) |
| 07/31/2001 | 30 | Discharge Certificate of Mailing. (auto) (Entered: 07/31/2001) |
| 10/26/2001 | 31 | Trustee's Report of No Distribution. (pkn) (Entered: 10/29/2001) |
| 11/02/2001 | 32 | Motion By Debtor For EMERGENCY Hearing MLRB 9013-01-(h) . Exhibits. c/s. (sav) (Entered: 11/02/2001) |
| 11/02/2001 | 33 | Motion By Debtor For Limitation of Service MLRBP 901301(h)(2) Re: [32-1] Motion For EMERGENCY Hearing MLRB 9013-01-(h) |

| | | |
|---|---|---|
| | | by Richard L. Livingston (sav) (Entered: 11/02/2001) |
| 11/06/2001 | 34 | ORDER: Denying [32-1] Motion For EMERGENCY Hearing MLRB 9013-01-(h) by Richard L. Livingston (in part) THE COURT HEREBY DENIES THE DEBTOR'S MOTION FOR EMERGENCY HEARING AS THE RELIEF REQUESTED BY THE DEBTOR IS BARRED BY THE ROOKER-FELDMAN DOCTRINE.1 THE DEBTOR'S REMEDY, IF ONE EXISTS, IS AN APPEAL FROM THE ORDERS OF THE PROBATE COURT. (pkn) (Entered: 11/06/2001) |
| 01/10/2002 | 35 | Order to Close Case and Discharge Trustee. (pkn) (Entered: 01/10/2002) |
| 01/10/2002 | | Case Closed. (pkn) (Entered: 01/10/2002) |

**Tab E**

# United States Bankruptcy Court

## District of Massachusetts

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**RICHARD LIVINGSTON,**
    Debtor

Chapter 7
Case No. 01-11602-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### ORDER

The Court has before it the Debtor's Motion for Emergency Hearing. Pursuant to his Motion, the Debtor is requesting an emergency hearing for this Court to provide him with "immediate assistance and guidance." The Debtor attached to his Motion numerous exhibits, which include, but are not limited to, 1) a copy of an order issued by this Court, dated April 24, 2001, granting the motion of Margaret Clifford, the Debtor's ex-spouse, for relief from the automatic stay "to proceed to assert her rights against the Debtor within the divorce proceeding between the Debtor and Clifford . . . by means [and] any means necessary. . . ;" 2) a copy of the order granting the Debtor a discharge pursuant to 11 U.S.C. § 727; 3) an Affidavit of the Debtor's expenses dated October 15, 2001; 4) a "Supplement to the Affidavit of Indigency" filed by the Debtor in the Trial Court, Probate and Family Court Department (the "Probate Court"), dated October 23, 2001; 5) a copy of a W-2 Form for 2000, showing that the Debtor received wages and other compensation totaling $21,1191.11; 6) a copy of the Debtor's Schedule I-Current Income of Individual Debtor(s), showing total monthly income of $1,133.08; 5) a copy of a Motion filed by Margaret

1



34

Clifford in the Probate Court for Contempt Sanction, in which she sought a "a conveyance

of [the] marital home as [a] sanction for Richard Livingston's . . . past bad deeds and his

willful attempts to circumvent probate court orders;" and 6) a copy of a Motion for

Tempory [sic] Orders filed by Richard Livingston on or around August 2, 2001 in the

Probate Court in which he sought to "modify the Child Support payments made by the

Plaintiff [the Debtor] so that they are in accordance with applicable Child Support

guidelines and his ability to pay," which motion was scheduled to be heard in the Probate

Court on October 25, 2001.

   As is evident from his Motion, the Debtor is seeking relief from orders entered by

the Probate Court, which he refers to as the "lower court." He states the following:

> The Child Support Guidelines were not utilized, nor were the resources of
> the custodial parent factored into the formula that should have been used.
> This exorbitant sum, now identified in the lower court as child support does
> not meet the law of the Commonwealth, or public policy, and continues to
> exacerbate the debtor's insolvency relegating him to the status of indigence,
> as recognized under Massachusetts chapter 261, Section 27D, because he is
> unable to provide the necessities of life for himself, such as food, shelter, and
> clothing. If the Bankruptcy Court does not redress this matter the Debtor
> will be in a perpetual state of servitude and insolvency . . . .

Debtor's Motion for Emergency Hearing at p. 3

   Upon consideration of the Debtor's Motion for Emergency Hearing and the

documents attached to it, as well as the record of proceedings in this case, including 1) the

order granting Margaret Clifford relief from the automatic stay; 2) the entry of the

discharge order on July 26, 2001; 3) the filing of a Report of No Assets by the Chapter 7

Trustee on October 26, 2001; and 4) the  request for an advisory opinion and/or reversal

2

or modification of the orders of the Probate Court, the Court hereby denies the Debtor's

Motion for Emergency Hearing as the relief requested by the Debtor is barred by the

Rooker-Feldman Doctrine.[1]    The Debtor's remedy, if one exists, is an appeal from the

---

[1] In Halvosen v. Mendez (In re Mendez), 246 B.R. 141 (Bankr. D. P.R. 2000), the United States Bankruptcy Court for the District of Puerto Rico succinctly explained the Rooker-Feldman Doctrine as follows:

> The Rooker-Feldman doctrine traces its origins to two U.S. Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). This doctrine recognizes that U.S. district courts are courts of original, not appellate jurisdiction. Thus, "lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions". Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 703 (1st Cir.1995); Hill v. Town of Conway, 193 F.3d 33 (1st Cir.1999).
>
> 'Even if jurisdiction would otherwise exist under 28 U.S.C. § 1334 over a given dispute, a bankruptcy court may not exercise jurisdiction over that dispute if, by so doing, it would be granting federal review of a state court determination or of an issue that is 'inextricably intertwined' with a state court judgment.' Bluebond, Sheri, Recent Developments in Jurisdiction, Venue, Abstention, Remand, Removal, Withdrawal of the Reference, Jury Trials and Appeals, 767 PLI/Comm. 9 (1998).
>
> In Snider v. City of Excelsior Springs, Missouri, 154 F.3d 809, 811-812 (8th Cir.1998), the court explained:
>
> > Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its holding. [cit. omitted] *Deciding whether Rooker-Feldman bars the plaintiffs' federal suit therefore requires that we determine what the state court held and whether the relief that the plaintiffs requested in their federal action would void the state court's decision or would require us to determine that the decision was wrong.*
>
> (Emphasis added.)

246 B.R. at 145-46.

3

orders of the Probate Court.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 6, 2001
cc: Richard Livingston, William E. Gately, Jr., Esq., Joseph G. Butler, Esq., Eunmi Lee, Esq.

4

**Tab F**

## COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, SS**

**Stoughton District Court**
CIVIL NO.

*0455 CV 53*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**RICHARD LIVINGSTON**     \*
    **Plaintiff**     \*
         \*
    **v.**     \*

**VICTORIA SCHEPPS**     \*
    **Defendant**     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
5544A000001/26/04CIVIL       130.00
5544A000001/26/04SURCHARGE    15.00
5544A000001/26/04COPY-WRIT     5.00
```

Now comes the Plaintiff Richard Livingston and alleges the following:

### *I.    The Parties*

1.  The Plaintiff, Richard Livingston is a resident of Milton, Massachusetts, County of Norfolk, Commonwealth of Massachusetts

2.  The Defendant, Victoria Schepps has a usual place of business in Stoughton, Commonwealth of Massachusetts

### *II    Allegations*

3.  On or about July, 2001 and all relevant times thereafter and before the Plaintiff was one of two owners of a property located at 15 Quarry Lane, Milton, Massachusetts.

4.  On or about July of 2001 the Defendant was the closing attorney in connection with a new mortgage placed on the property by Margaret Clifford.

5.  On or about July 2001 a closing took place at which time the closing proceeded without notice to the Plaintiff.

6.  On or about July 2001 and all relevant times thereafter Defendant has failed to obtain and file discharges on the property

JAN 2 3 2004

7.    On or about July 2001 and relevant times thereafter the Defendant has failed to comply with other statutory duties in connection with the closing.

8.    As a direct and proximate result the Defendant has impaired the Plaintiff's value in the property.

9.    As a direct and proximate result thereof the Defendant has caused the Plaintiff to incur intentional emotional distress.

Wherefore the Plaintiff demands judgment against the Defendant I an amount to be determined by a Judge and/or Jury.

By
Richard Livingston
Plaintiff,
By his Attorney,


William E. Gately, Jr., Esquire
Law Offices of William E. Gately, Jr.
400 Washington Street
P.O. Box 850920
Braintree, MA  02184
TEL.#:  (781) 848-1200
BBO#:  549132

Dated:  1/19/06

THE PLAINTIFF DEMANDS A TRIAL BY JURY

JAN 2 3 2004

| STATEMENT OF DAMAGES<br>St. 1996, c. 358, § 5 | 1 23-04    0Y55CV 53 | Trial Court of Massachusetts<br>District Court Department |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Richard Livingston | Victoria Schepps |

**INSTRUCTIONS:** THIS FORM MUST BE COMPLETED AND FILED WITH THE COMPLAINT OR OTHER INITIAL PLEADING IN ALL DISTRICT COURT CIVIL ACTIONS SEEKING MONEY DAMAGES IN BARNSTABLE, BERKSHIRE, BRISTOL, DUKES, ESSEX, FRANKLIN, HAMPDEN, HAMPSHIRE, MIDDLESEX, NANTUCKET AND NORFOLK COUNTIES.

**STOUGHTON** DISTRICT COURT

| TORT CLAIMS | AMOUNT |
|---|---|
| A.  Documented medical expenses to date: | |
|     1. Total hospital expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
|     2. Total doctor expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
|     3. Total chiropractic expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
|     4. Total physical therapy expenses: . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
|     5. Total other expenses (Describe): _____ | $ _____ |
|     _____ SUBTOTAL: | $ _____ |
| B.  Documented lost wages and compensation to date: . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| C.  Documented property damages to date: . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| D.  Reasonably anticipated future medical and hospital expenses: . . . . . . . . . . . . . . . . . | $ _____ |
| E.  Reasonably anticipated lost wages: . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| F.  Other documented items of damage (Describe): _____ | $ _____ |
|     _____ | |
| G.  Brief description of Plaintiff's injury, including nature and extent of injury (Describe): | |
|     _____ | |
|     _____ | |
|     _____ | |
| For this form, disregard double or treble damage claims; indicate single damages only. **TOTAL:** | $ |

| CONTRACT CLAIMS | AMOUNT |
|---|---|
| Provide a detailed description of claim(s): _____ | $ 20,000 |
| _____ | $ _____ |
| _____ | $ _____ |
| For this form, disregard double or treble damage claims; indicate single damages only. **TOTAL:** | $ 20,000.00 |

| ATTORNEY FOR PLAINTIFF (OR PRO SE PLAINTIFF): | DEFENDANT'S NAME AND ADDRESS: |
|---|---|
| Signature | Victoria Schepps |
| William F. Gately Jr.    Date 849/32 | 8 cabot Place |
| Print or Type Name    B.B.O.# | Stoughton, MA |
| PO Box 850920, Braintree, MA<br>Address    02188 | JAN 2 3 2004 |

4/02

33

**Tab G**

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.
                                                    STOUGHTON DISTRICT COURT
                                                    CIVIL ACTION NO. 0455-CV-53

RICHARD LIVINGSTON,
        Plaintiff

v.

VICTORIA SCHEPPS,
        Defendant

*Allowed after hearing Cummings*
3-10-05

## DEFENDANT, VICTORIA SCHEPPS' MOTION
## FOR JUDGMENT ON THE PLEADINGS

Now comes the defendant, Victoria Schepps ("Schepps"), and moves this Honorable

Court, pursuant to Rule 12(c) of the Massachusetts Rules of Civil Procedure, for entry of

judgment on the pleadings on her behalf. As grounds for this motion, Schepps submits that

based on the pleadings, she is entitled to judgment in her favor for the following reasons: (1) the

plaintiff fails to state a claim against Schepps for the alleged impairment of the plaintiff's value

in the subject property; (2) Schepps owed no duty to the plaintiff; and (3) the plaintiff is not

entitled to emotional distress damages. In further support of this motion, Schepps also

respectfully submits a memorandum of law, attached hereto.

WHEREFORE, the defendant, Victoria Schepps, respectfully requests that this

Honorable Court enter judgment on the pleadings in her behalf.

                                    Respectfully Submitted,

                                    VICTORIA SCHEPPS,

                                    By her attorneys,

                                    George C. Rockas, BBO# 544009
                                    Christopher P. Flanagan, BBO# 567075
                                    Wilson, Elser, Moskowitz, Edelman
                                        & Dicker, LLP
                                    155 Federal Street
                                    Boston, MA 02110
                                    (617) 422-5300

Dated: January 3, 2005

RECEIVED
STOUGHTON DISTRICT COURT

JAN 0 4 2005

33060.1

CERTIFICATE OF SERVICE

I, Christopher P. Flanagan, hereby certify that I have this 3rd day of January 2005 served the foregoing document, by first class mail, postage prepaid, upon counsel of record.

Christopher P. Flanagan

RECEIVED
STOUGHTON DISTRICT COURT

JAN 0 4 2005

2

33060.1

**Tab H**

# COMMONWEALTH OF MASSACHUSETTS

**Norfolk, SS.**

Stoughton District Court
**CIVIL ACTION DOCKET
NO. 0455cv53**

*Denied after hearing
Cummins, J
4/28/05*

```
************************  *
RICHARD LIVINGSTON       *
        Plaintiff        *
                         *
     V.                  *
                         *
VICTORIA SCHEPPS         *
        Defendant        *
                         *
************************  *
```

## PLAINTIFF'S MOTION FOR RECONSIDERATION, TO VACATE JUDGMENT AND TO AMEND COMPLAINT.

Now comes the Plaintiff and respectfully requests that this Court vacate the Judgment entered on March 15, 2005, reconsider its decision with respect to the Defendant's Motion to Dismiss the Complaint on the pleadings and to amend her Complaint.

The Court granted the Defendant's Motion on the basis that the Defendant owed no duty to the Plaintiff and therefore as a matter of law the Complaint could not succeed.

The Plaintiff respectfully submits that the Courts ruling was not in accordance with the governing law and respectfully requests that the Court reconsider its decision.

In addition in accordance with discovery recently conducted with respect to this case the Plaintiff respectfully requests permission to amend his complaint in accordance with the evidence pursuant to Rule 15 of the Massachusetts Rules of Civil Procedure.

In support of this motion the Plaintiff submits the following for the Courts consideration:

    1.    The Plaintiff and his former spouse, Margaret Clifford jointly own property located at 15 Quarry Lane, Town of Milton, County of Norfolk, Commonwealth of Massachusetts.

APR 1 1 2005

2.    The Plaintiff and his former spouse were divorced prior to the refinancing of the property located at 15 Quarry Lane, Quincy, MA 02169.

3.    The Plaintiff filed a Petition for Bankruptcy under Chapter 7 of the United States Bankruptcy Code in 2001.

4.    On or about May 24, 2001 the Norfolk County and Probate Court entered an order which states "The former wife shall have the right to refinance the first and second mortgages with respect to the former marital home in order to satisfy the existing first and second mortgages and to pay outstanding marital debt if she so elects."

5.    On or about May 24, 2001 the Court also ordered that "the former husband shall not be required to sign any documents in connection with wife's effort to refinance the outstanding mortgages and existing marital debt.

6.    The Justice from the bench also ordered orally that the wife would not be able to refinance the property without the signature the Plaintiff.

7.    During the Spring of 2001 the Plaintiff's former spouse applied for a mortgage with RAH Federal Credit Union and the Chittenden Bank d/b/a The Mortgage Service Center.

8.    Just prior to the discharge the United States Bankruptcy Court granted a discharge to the Plaintiff. In doing so the Bankruptcy Trustee abandoned any claim the unsecured creditors may have had with respect to the property located at 15 Quarry Lane, Town of Milton, County of Norfolk.

9.    The Defendant was retained by the lenders to act as the closing agent and Attorney with respect to this matter.

10.    On or about July 27, 2001 a closing took place between the lenders and the Plaintiff's former spouse with the Defendant acting as a closing agent.

11.    The Defendant was also aware that the Plaintiff's former spouse was authorized to seek the mortgage for which she has applied for a very specific and limited purpose.

12.    The Defendant at the time of the closing was aware or should have been aware of the fact that the amount of the mortgage was for a sum far in excess of what was necessary to accomplish the stated purpose.

13.   The Defendant following the closing, as the closing agent, disbursed the monies.

14.   In doing so the Defendant failed to disburse the monies so as to satisfy the existing first and second mortgages and to pay outstanding marital debt.

15.   In doing so the Defendant disbursed excess funds to the Plaintiff's former spouse and to pay off personal loans of the plaintiff's spouse.

16.   At no time during the application process or the closing was the Plaintiff made aware by either his former spouse, the lenders or the Defendant that his former spouse had applied for or been granted a mortgage which was secured by the jointly owed property located at 15 Quarry Lane, Milton, Massachusetts.

17.   The Plaintiff became aware of the closing and new mortgage approximately 30 to 60 days after the closing.

20.   The Defendant was the Attorney and closing agent for the Lenders RAH Federal Credit Union and Chittendent Bank d/b/a Mortgage Service Center.

21.   The Plaintiff and the Defendant did not have either an express or implied Attorney Client relationship.

22.   The Defendant was aware that the Plaintiff was the joint property owner which was the security for the mortgage closed on July 27, 2001 between the lenders and the Plaintiff's former spouse.

23.   The Defendant was aware or should have been aware that the Plaintiff's former spouse had been granted permission to refinance the property for a very specific purpose.

24.   The Defendant was aware or should have been aware that the Plaintiff had not been notified of the closing or even the loan application.

25.   As the closing agent and Attorney the Defendant had a duty to notify the Plaintiff of the closing and the disbursements of the monies in accordance therewith.

26.   As the closing agent and Attorney the Defendant had a duty to act in accordance with the Court order of the Norfolk Probate and Family Court dated May 24, 2001. (See Exhibit A)

RECEIVED
......... COURT

APR 1 1 2005

27.  The Defendant had a duty to disburse monies only in accordance with the Order of the Court dated May 24, 2001.

28.  The Defendant had a duty to ensure that all liens and mortgages were properly discharged.

29.  The Plaintiff had the right to rely on the fact that the Defendant would not breach her duties.

30.  The Plaintiff's reliance was foreseeable to the Defendant in light of the facts as specified above.

31.  The Defendant's negligent acts and omissions breached the duty upon which the Plaintiff relied.

32.  The Plaintiff sustained damages as a result of the Defendant's negligent acts and omissions.

The Plaintiff respectfully submits that the controlling case in this matter is **Robertson v. Gaston, Snow and Ely Bartlett, 404 Mass 515, 524 (1989).** Specifically while neither a direct or implied Attorney Client relationship exists the Defendant owed the Plaintiff duties as specified above under the Doctrine of Foreseeable Reliance.

The Plaintiff in light of the facts specified above and as a joint property owner can reasonably be expected to establish that he reasonably relied upon the subject legal services in light of the facts as they exist and that the Defendant should have reasonably foreseen that the Plaintiff, non-client, would rely upon the Defendant satisfying the duties owed to him.

In light of the fact that the Plaintiff was not required to sign the documents under the May 21, 2001 Court Order the Defendant could not only foresee such reliance but had direct knowledge of such reliance.

Likewise in light of the fact that the Plaintiff was permitted to finance the property located at 15 Quarry Lane, Milton, Massachusetts only for the specified purpose the duty owed to the lenders by its Attorney and closing agent were in complete conformity and without conflict to the duties owed the Plaintiff.

APR 1 1 2005

Conclusion

Wherefore the Plaintiff respectfully requests that Court grant this motion.


William E. Gately, Jr., Esquire
Attorney for the Plaintiff
400 Washington Street
P.O. Box 850920
Braintree, MA 02185
(781) 848-1200
BBO# 850920


Dated 4/5/05

APR 1 1 2005

**Tab I**

**Trial Court of Massachusetts**
**District Court Department**

| | |
|---|---|
| **DATE FILED** 1/23/04 | **TIME STANDARDS TRIAL REQUEST DEADLINE** | **DOCKET NUMBER** 0455CV 53 |

| **PLAINTIFF** | **DEFENDANT** |
|---|---|
| Richard Livingston | Victoria Schepps |

Stoughton District Court
1288 Central Street
Stoughton, MA. 02072

| **PLAINTIFF ATTORNEY** | **DEFENDANT ATTORNEY** |
|---|---|
| William E. Gately, Jr. <br> 400 Washington St. <br> PO BOX 850920 <br> Braintree, MA 02184 <br> 781-848-1200 | George C. Rockas, Esq. <br> Wilson,Elser,Moskowitz, <br> Edelman & Dicker, LLP <br> 155 Federal St,5th fl. <br> Boston, Ma. 02110 |

**MONEY DAMAGE ACTION (TIME STANDARDS)**
[ ] Remand [XX] District Court Filing

Contract

[ ] SUMMARY PROCESS [ ] VICTIM VIOLENT CRIME [X] OTHER CIVIL

| NO. | DATE | DOCKET ENTRIES |
|---|---|---|
| 1. | 1/23/04 | Complaint filed [XX] Statement of damages filed (if applicable) |
| 2. | 3/1/04 | Summons served 2/19/04 in hand to Victoria Schepps |
| 3 | 3/10/04 | Answer of Defendant |
| 4 | 4-13-04 | NOTICE OF CASE MANAGEMENT CONFERENCE FOR 6-15-04 10AM SENT |
| 5 | 10/26/04 | Notice of Pre Trial on 10/26/04 at 10:00 a.m. |

(date) 9-15-04 Case entered
into BasCOT system.

I HEREBY CERTIFY THAT THIS IS A TRUE
COPY, GIVEN UNDER MY HAND AND SEAL
THIS 3rd DAY OF Feb 2006

*Maureen A Pattucci*

CLERK MAGISTRATE
ASSISTANT CLERK

---

**DATE OF ENTRY OF JUDGMENT** | [ ] CIVIL | [ ] SUMMARY PROCESS

[ ] Judgment for _____.

[ ] $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to
date of execution

[ ] Possession

[ ] Judgment on defendant's counterclaim for _____.

[ ] $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to
date of execution.

DOCKET NUMBER

| Civil<br>DOCKET | 200455CV000053 | Trial Court of Massachusetts<br>District Court Department |
| --- | --- | --- |

| CASE NAME<br>**RICHARD LIVINGSTON vs. VICTORIA SCHEPPS** | CURRENT COURT<br>Stoughton District Court<br>1288 Central St.<br>Stoughton, MA 02072-4419<br>(781) 344-2131 |
| --- | --- |

| ASSOCIATED DOCKET NO. | DATE FILED<br>01/23/2004 | DATE DISPOSED<br>03/15/2005 | |
| --- | --- | --- | --- |

| PLAINTIFF(S)<br>P01   RICHARD LIVINGSTON | PLAINTIFF'S ATTORNEY<br>WILLIAM E. GATELY, Jr<br>400 WASHINGTON STREET<br>P. O. BOX 850920<br>BRAINTREE, MA 02185<br>(781) 848-1200 |
| --- | --- |

| DEFENDANT(S)/OTHER SINGLE PARTIES<br>D01   VICTORIA SCHEPPS<br>6 CABOT PLACE<br>STOUGHTON, MA 02072 | DEFENDANT'S ATTORNEY<br>GEORGE C. ROCKAS<br>& DICKER, LLP<br>155 FEDERAL STREET<br>BOSTON, MA 02110<br>(617) 422-5300 |
| --- | --- |

I HEREBY CERTIFY THAT THIS IS A TRUE
COPY, GIVEN UNDER MY HAND AND SEAL
THIS 3rd DAY OF Feb 2006

*Maureen R Petrucci*

~~CLERK-MAGISTRATE~~
**ASSISTANT CLERK**

| NO. | ENTRY DATE | DOCKET ENTRIES |
| --- | --- | --- |
| 1 | 09/15/2004 | Case added to BasCOT computer system at Stoughton District Court; see earlier manual docket for prior docket entries. |
| 2 | 09/15/2004 | Appearance for Richard Livingston filed by Attorney WILLIAM E. GATELY, Jr 400 Washington Street P. O. Box 850920 Braintree MA 02185 BBO# 549132 |
| 3 | 09/15/2004 | Appearance for Victoria Schepps filed by Attorney GEORGE C. ROCKAS & Dicker, Llp 155 Federal Street Boston MA 02110 BBO# 544009 |
| 4 | 09/15/2004 | PRETRIAL CONFERENCE SCHEDULED for 10/26/2004 10:00 AM. |
| 5 | 10/26/2004 | PRETRIAL CONFERENCE SCHEDULED on 10/26/04 10:00 AM RESCHEDULED for 1/25/05 10:00 AM. Reason: Request of all parties. |
| 6 | 10/26/2004 | Notice of pretrial conference sent to parties. |
| 7 | 10/26/2004 | Memorandum filed by P01  RICHARD LIVINGSTON.   Joint Pre Trial Memo Filed. |

| Page 1 of 3 | A TRUE COPY,<br>ATTEST: | CLERK-MAGISTRATE/ASST. CLERK<br>X | | DATE |
| --- | --- | --- | --- | --- |

## DOCKET CONTINUATION

DOCKET NUMBER
**200455CV000053**

| NO. | ENTRY DATE | DOCKET ENTRIES |
|---|---|---|
| 8 | 12/03/2004 | PRETRIAL CONFERENCE SCHEDULED on 1/25/05 10:00 AM RESCHEDULED for 1/20/05 02:00 PM. Reason: Other. (New Court schedule.) |
| 9 | 01/10/2005 | Motion for judgment on the pleadings (Mass.R.Civ.P. 12[c]) filed by D01 VICTORIA SCHEPPS. ALLOWED AFTER HEARING 03/10/05 |
| 10 | 01/10/2005 | Memorandum filed by D01 VICTORIA SCHEPPS. |
| 11 | 01/10/2005 | MOTION SCHEDULED FOR HEARING on 01/20/2005 10:00 AM. |
| 12 | 01/10/2005 | Notice of next event sent to parties. |
| 13 | 01/19/2005 | MOTION SCHEDULED on 1/20/05 10:00 AM RESCHEDULED for 2/17/05 10:00 AM. Reason: Request of all parties. continued to 2/24/05. Notice sent. |
| 14 | 01/19/2005 | Motion Joint Motion to continue Pre Trial filed by P01 RICHARD LIVINGSTON. 1/19/05 ALLOWED. |
| 15 | 01/19/2005 | PRETRIAL CONFERENCE SCHEDULED for 04/21/2005 09:00 AM. |
| 16 | 01/19/2005 | Notice of pretrial conference sent to parties. |
| 17 | 01/28/2005 | Motion to Compel Witness to attend Depositions filed by P01 RICHARD LIVINGSTON.          designee of RAH Federal Credit Union ALLOWED after hearing |
| 18 | 01/28/2005 | Motion to Compel Witness to Attend Depositions filed by P01 RICHARD LIVINGSTON.          designee of MBTA Employee Credit Union   OFF LIST 2/3/05 |
| 19 | 01/28/2005 | Motion to Compel Witness to Attend Depositions filed by P01 RICHARD LIVINGSTON.          Keeper of the Records Cumex ALLOWED after hearing |
| 20 | 01/28/2005 | MOTIONS SCHEDULED FOR HEARING on 02/03/2005 10:00 AM. |
| 21 | 02/02/2005 | Opposition filed by Atty. Gary Kravetz MBTA Employees Credit Union to Motion to compel witness to attend Depositions that was filed on 01/19/2005. |
| 22 | 02/02/2005 | Affidavit of RUTH EPPS filed. |
| 23 | 02/02/2005 | Affidavit of GARY J KRAVETZ filed. |
| 24 | 02/04/2005 | Faxed letter and a mailed letter from Atty. Gary Kravetz |
| 25 | 02/04/2005 | MOTION SCHEDULED on 2/3/05 10:00 AM RESCHEDULED for 2/24/05 10:00 AM. Reason: Request of all parties. |
| 26 | 02/04/2005 | Notice of next event sent to parties. |
| 27 | 02/10/2005 | Ex parte motion to quash suboena issued & for protect. order filed by MARGARET CLIFFORD. AFTER ARGUEMENT FOR MRS. CLIFFORD, MOTION ALLOWED 2/10/05 PROPOSED ORDER filed in case. |

I HEREBY CERTIFY THAT THIS IS A TRUE
COPY, GIVEN UNDER MY HAND AND SEAL
THIS 3rd DAY OF Feb 2006
~~CLERK MAGISTRATE~~
ASSISTANT CLERK

| Page 2 of 3 | A TRUE COPY, ATTEST: | CLERK-MAGISTRATE/ASST. CLERK  X | DATE |
|---|---|---|---|

Date/Time Printed: 02/03/2006 09:05 AM

# DOCKET CONTINUATION

DOCKET NUMBER
**200455CV000053**

| NO. | ENTRY DATE | DOCKET ENTRIES |
|---|---|---|
| 28 | 02/10/2005 | MOTION SCHEDULED FOR HEARING on 02/10/2005 10:00 AM. |
| 29 | 02/17/2005 | Motion to Reconsider Motion to Quash filed by P01 RICHARD LIVINGSTON. |
| 30 | 02/17/2005 | Opposition of Plaintiff Richard livingston to Margaret Clifford's Motion to Quash  FILED |
| 31 | 02/17/2005 | Memorandum filed by P01 RICHARD LIVINGSTON. |
| 32 | 02/18/2005 | Notice sent to parties. |
| 33 | 02/23/2005 | MOTION SCHEDULED on 2/24/05 10:00 AM RESCHEDULED for 3/10/05 10:00 AM. Reason: Request of all parties. |
| 34 | 03/14/2005 | Opposition filed by P01 RICHARD LIVINGSTON to Motion for judgment on the pleadings (Mass.R.Civ.P. 12[c]) that was filed on 01/04/2005. |
| 35 | 03/15/2005 | Notice sent to parties. |
| 36 | 03/15/2005 | PRETRIAL CONFERENCE SCHEDULED on 4/21/05 CANCELED. Reason: Other. |
| 37 | 03/15/2005 | Case Inactivated: No future events scheduled. |
| 38 | 03/15/2005 | Judgment of dismissal of claim of P01 RICHARD LIVINGSTON against D01 VICTORIA SCHEPPS upon motion ( Crimmins, Jr., Hon. Francis T. ); parties notified. |
| 39 | 04/11/2005 | Motion for reconsideration,to vacate judgment and to amend complaint filed by P01 RICHARD LIVINGSTON.  Denied after hearing  4/28/05 |
| 40 | 04/11/2005 | MOTION SCHEDULED FOR HEARING on 04/14/2005 10:00 AM. |
| 41 | 04/13/2005 | MOTION SCHEDULED on 4/14/05 10:00 AM RESCHEDULED for 4/21/05 10:00 AM. Reason: Request of all parties. |
| 42 | 04/21/2005 | MOTION SCHEDULED on 4/21/05 10:00 AM RESCHEDULED for 4/28/05 10:00 AM. Reason: Other. |
| 43 | 04/21/2005 | Notice of next event sent to parties. |
| 44 | 04/28/2005 | Opposition filed by D01 VICTORIA SCHEPPS to Motion Reconsideration, vacate judgment & Amend that was filed on 04/11/2005. |
| 45 | 04/28/2005 | Case Inactivated: Judgment of dismissal has been entered. |
| 46 | 04/28/2005 | Notice sent to parties. |

I HEREBY CERTIFY THAT THIS IS A TRUE COPY, GIVEN UNDER MY HAND AND SEAL THIS 3rd DAY OF Feb 2006

CLERK MAGISTRATE
ASSISTANT CLERK

| Page 3 of 3 | A TRUE COPY, ATTEST: | CLERK-MAGISTRATE/ASST. CLERK  X | DATE |
|---|---|---|---|

Date/Time Printed: 02/03/2006 09:05 AM